IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
JANUARY 1997 SESSION



FILED

December 16, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | No. 03C01-9602-CC-00076 |
| | ) | |
| Appellee | ) | |
| | ) | SULLIVAN COUNTY |
| V. | ) | |
| | ) | HON. FRANK L. SLAUGHTER, |
| FREDDIE JOE DAY, JR., | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Especially Aggravated Kidnapping; |
| | ) | Aggravated Assault) |
| | ) | |

For the Appellant:

Stephen M. Wallace
District Public Defender

Terry L. Jordan
Assistant Public Defender
P.O. Box 839
Blountville, TN 37617

For the Appellee:

John Knox Walkup
Attorney General and Reporter

Clinton J. Morgan
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

H. Greeley Wells, Jr.
District Attorney General

Rebecca H. Davenport
Assistant District Attorney
P.O. Box 526
Blountville, TN 37617

OPINION FILED: _____

AFFIRMED AS MODIFIED

WILLIAM M. BARKER, JUDGE

**OPINION**

The appellant, Freddie Joe Day, Jr., appeals as of right his convictions and sentences in the Sullivan County Criminal Court. After a jury trial, the appellant was convicted of especially aggravated kidnapping and aggravated assault and was sentenced as a Range I offender to twenty five (25) years for the kidnapping offense and six (6) years for aggravated assault. The sentences were ordered to run concurrently for a total effective sentence of twenty five years.

Appellant raises three issues on appeal: (1) whether the evidence was sufficient to sustain his convictions; (2) whether the trial court erred in denying his motion to dismiss the aggravated assault charge; and (3) whether the trial court erred in sentencing him to the maximum sentence on each offense. After a careful review of the record and applicable law, we affirm the appellant's convictions but modify his sentence for aggravated assault.

**FACTUAL BACKGROUND**

Around 8:00 p.m. on the evening of January 7, 1995, Carolyn Wilson left her home in Church Hill and was traveling to Colonial Heights to visit friends. *En route*, she passed a mini-van driven by a friend of hers traveling in the opposite direction. Soon thereafter, she noticed a vehicle behind her with its headlights repeatedly flashing from bright to dim. Believing this to be the friend she had just seen, she pulled over to the side of the road at the entrance to the Eastman Chemical facility in Kingsport. She then exited her car and walked toward the vehicle which had pulled in behind her. Appellant, the driver of the car, had stepped from his vehicle. Wilson realized that she did not know the driver and stopped walking. Appellant asked her if she knew how to get to Duffield, Virginia. Wilson replied that she knew nothing about Virginia and turned to get back in her car.

Wilson testified that as she turned away, appellant grabbed her arm and pulled her toward his car. She screamed, "Let me go," and tried to push him away. They

2

struggled and she told appellant to take her money and her car, but pleaded with him to let her go. Appellant responded by saying he had a gun and would shoot her if she did not get in his car. When Wilson continued to resist, the appellant pulled out a small silver handgun saying, "You see this? I'll shoot you." Wilson testified that she was not really afraid that he would shoot her, so she continued to resist. The appellant then struck her on the back of the head, apparently with the gun. Wilson testified at that point she became afraid and believed he would shoot her. Appellant, thereafter, forced Wilson into the driver's side door of his car and allowed her to crawl to the passenger's seat. He then sped away, driving through the Eastman facility by security headquarters and making a U-turn in order to get back onto a main thoroughfare.

Wilson testified that appellant drove on Eastman Road and then turned right onto Fort Henry Drive, which took them into Colonial Heights. He asked her to try opening the passenger door. When Wilson replied that it would not open, appellant said, "I know, I've jammed it." While driving, appellant would point the gun at her head and threaten to shoot her if she did not calm down. He also told her that he had robbed a bank. When they reached Colonial Heights, appellant stopped to buy gas at a Texaco station. Appellant ordered Wilson to get out of the car, pump $10 of gas, and avoid any attempts to escape. He threatened to shoot her and everyone in the store if she acted against his wishes. Wilson complied with appellant's instructions while he entered the store and paid for the gas. He came back to the car, opened the passenger door for Wilson, returned to the driver's side, and drove away.

They again traveled on Fort Henry Drive, but in the opposite direction toward Kingsport. Appellant told Wilson that if she would take him to the mall, he would let her go because he knew how to get home from there. Wilson directed him accordingly, but he drove past the Fort Henry Mall and continued driving through Kingsport. He then told Wilson he would take her to Duffield, Virginia and call a taxi to take her home. During the drive, he asked Wilson about her head injury and whether

3

she would live. When she replied, "No," appellant then said, "Well, if you're not going to live then I'm going to go ahead and shoot you anyway." Wilson told him she would be fine.

Security officers at the Eastman facility had witnessed appellant and Wilson struggling at the scene. Although they were unable to stop the appellant as he sped through the facility, they contacted the Kingsport Police. Officers investigated Wilson's car, which remained on the roadside and discovered her personal identification. They also obtained a description of appellant's car from the security personnel. All law enforcement officials were notified about the incident and advised to look for appellant's car, a gray 1980's model Oldsmobile with Virginia license plates.

Wilson stated that they drove from Center Street onto Lynn Garden Drive, which leads into Virginia. Appellant then noticed that a police car was behind them and in response to its flashing blue lights, he pulled over. He instructed Wilson that he did not have a gun and that he did not want her to say anything. He then placed the gun in the car's console between the driver and passenger seats. An officer approached the car and asked Wilson her name. When it matched the identification found in the abandoned car, the officer asked appellant to step out of the car. Another officer arrived and Wilson, hysterical by that time, jumped from the car and informed him that appellant had a gun. A .38 caliber Rossi revolver containing three live rounds was recovered from the car's console. Police officers then arrested the appellant.

Wilson was taken to the hospital where she received three stitches for her head injury. Pictures at trial depicted blood smeared on the head rest of the passenger's seat in appellant's car. In addition, Wilson's jacket, introduced at trial, had a significant amount of blood on it. Wilson sustained no other injuries.

The appellant's wife testified that she and appellant had owned the gray Oldsmobile since 1993 and that the passenger door was broken since the time of the purchase. According to her testimony, the door could be opened from the outside, but not from the inside. In addition, she stated that the revolver, found in the car, had

4

been placed in the car on January 6, 1995, and had not been removed. Finally, she stated that since their marriage, appellant had only been to Kingsport on one occasion.[1]

Based upon the foregoing evidence, appellant was convicted of especially aggravated kidnapping and aggravated assault.

## ANALYSIS

The appellant challenges the sufficiency of the evidence supporting both convictions. This issue is without merit.

An appellant challenging the sufficiency of the evidence has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact. This Court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). We must consider the evidence in the light most favorable to the prosecution in determining whether "any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record, as well as all reasonable and legitimate inferences which may be drawn therefrom. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). We further note that a guilty verdict

---

[1]The appellant did not testify at trial. However, the defense called appellant's wife and two other potential witnesses. The defense called an investigator from the public defender's office to testify about pictures of the gas station where appellant and Wilson stopped. The trial court did not permit the investigator to testify because it found that the basis of his testimony was inadmissible. Additionally, the defense called the detective investigating the crime to testify about appellant's state of mind after he was arrested and confined at the local jail. The trial court ruled that the detective was not competent to testify about appellant's state of mind because he lacked the requisite expertise. Furthermore, the detective had already testified on cross-examination that appellant was nervous and scared when he was in the jail. The trial court found that any additional testimony from the detective would be cumulative. Therefore, the trial court ruled that the detective could not testify for the defense. Those rulings are not challenged on appeal.

rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State. See State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

In this case, the appellant was indicted for the especially aggravated kidnapping and aggravated assault of Carolyn Wilson by use of a deadly weapon. See Tenn. Code Ann. §§ 39-13-305(a)(1) and 39-13-102(a) (1991). On the kidnapping charge, the State was required to prove beyond a reasonable doubt that the appellant, with the use of a deadly weapon, knowingly removed or confined the victim unlawfully so as to substantially interfere with her liberty. There was overwhelming proof of those elements at trial.

The victim, Wilson, testified that appellant grabbed her arm as she tried to return to her car. He refused to release her arm and threatened her with a weapon if she would not get into his car. He then shoved her into the car and kept her captive while he drove around the city. Other witnesses corroborated Wilson's testimony. Two security officers from the Eastman facility testified that they witnessed a struggle between appellant and Wilson and that appellant used force to place Wilson into his car. That evidence is sufficient to show that appellant knowingly confined Wilson and substantially interfered with her liberty. Moreover, during the course of the kidnapping, appellant possessed a gun, revealed it to Wilson, and threatened to shoot her with it. That evidence is sufficient to support a conviction of especially aggravated kidnapping.

The second count of the indictment alleged that appellant "did unlawfully, intentionally, knowingly, or recklessly and feloniously cause bodily injury to Carolyn Wilson by striking and cutting her head with a deadly weapon . . ." See Tenn. Code Ann. § 39-13-102(a) (1991). Those elements of aggravated assault were also proved at trial. After struggling with Wilson, appellant struck her on the back of the head with his gun, causing an injury which bled extensively and required three stitches. From those facts, a rational trier of fact could find that the appellant knowingly or intentionally caused bodily injury to Wilson by use of a deadly weapon. The jury's guilty verdict on both counts was amply supported by evidence at trial.

6

The appellant, however, argues that the proof was inadequate to show that he used a deadly weapon. He relies upon the testimony from the Eastman security guards who stated that they did not observe him wielding a gun. He further points to Wilson's testimony in which she stated that she did not actually see the gun strike her head. This argument is without merit.

Wilson testified that, during the initial struggle, appellant specifically drew her attention to the gun in his hand. He then threatened to shoot her with it. As she turned her head away from the appellant, he struck her with a blunt object, causing an injury which required three stitches. Although Wilson did not see the gun strike her, it was reasonable for the jury to infer that appellant struck Wilson with that weapon. The appellant suggests that the injury could have been inflicted by a ring or a set of keys. However, such a finding would have been pure speculation absent any proof.

Moreover, the security guards testified that they were between 250 and 300 feet from the appellant and Wilson when they witnessed the struggle. Considering their distance and the fact that the struggle occurred at eight o'clock in the evening, their vision was more obscured than Wilson's, who was in close proximity to the appellant. The jury's verdict credits Wilson's testimony and we find appellant's argument unpersuasive.

## II.

The appellant next contends that the trial court erred in denying his motion to dismiss the aggravated assault charge.

This issue is without merit.

Appellant's argument relies upon the principles announced by our supreme court in State v. Anthony, 817 S.W.2d 299 (Tenn. 1991). In Anthony, the court held that due process of law will not permit a kidnapping conviction where the detention of the victim is essentially incidental to the commission of another felony, such as

7

robbery or rape.[2]  See id at 306.  The court recognized that under the statutory

definition of kidnapping, evidence proving an offense of robbery or rape inherently

proves the elements of kidnapping.  However, as reasoned by the court, the

legislature did not intend for defendants convicted of robbery or rape to also be

convicted and punished for the incidental kidnapping.  Under that analysis, the

supreme court concluded that the kidnapping convictions could not stand.

In contrast to Anthony, the appellant in this case does not contest the validity of

his kidnapping conviction, but instead contends that his conviction of aggravated

assault cannot stand.  He asserts that the aggravated assault was committed during

the course of the kidnapping and was "essentially incidental" to the kidnapping.

Although we acknowledge that the rule from Anthony is not limited to cases involving

robbery and kidnapping[3], we find that Anthony does not apply in appellant's case.

The appellant was charged and convicted of especially aggravated kidnapping

and aggravated assault, in violation of Tennessee Code Annotated sections 39-13-

305 and 102 (1991).  The Tennessee Code defines especially aggravated kidnapping

as false imprisonment[4] "accomplished with a deadly weapon or by display of any

article used or fashioned to lead the victim to reasonably believe it to be a deadly

weapon."  See Tenn. Code Ann. § 39-13-305 (a)(1).  Aggravated assault is defined as

---

[2]The Anthony decision is premised solely upon due process grounds and the court there emphasized the inadequate nature of a double jeopardy analysis in such cases.  See 817 S.W.2d at 303-304.  We note, however, that the supreme court recently formulated a more stringent analysis for double jeopardy purposes.  See State v. Denton, 938 S.W.2d 373, 381(Tenn. 1996).  We have therefore conducted the double jeopardy analysis outlined by our supreme court in Denton, although not raised as an issue on appeal.  We conclude that the statutory offenses charged and the factual circumstances giving rise to the offenses do not violate appellant's protection against double jeopardy.  However, this does not preclude a possible due process violation under Anthony.

[3]See State v. Roberts, 943 S.W.2d 403 (Tenn. Crim. App. 1996) (finding the due process concerns of Anthony applicable to convictions for burglary and attempted theft); State v. Gregory, 862 S.W.2d 574, 579 (Tenn. Crim. App. 1993) (upholding trial court's application of Anthony although armed robbery was not involved); State v. Timothy Adams, aka Skinny Rock, No. 02C01-9512-CC-00376 (Tenn. Crim. App., at Jackson, January 2, 1997) (applying double jeopardy analysis and Anthony analysis to convictions for attempted first degree murder and aggravated assault); State v. Cornelius T. Luster, No. 02C01-9201-CR-00019 (Tenn. Crim. App., at Jackson, November 25, 1992) (applying Anthony to convictions for attempted aggravated rape and aggravated assault and dismissing aggravated assault as essentially incidental to the rape).

[4]False imprisonment is defined as knowingly removing or confining the victim so as to substantially interfere with his or her liberty.  See Tenn. Code Ann. § 39-13-302(a) (1991).

intentionally, knowingly, or recklessly causing bodily injury to the victim by use of a deadly weapon. See Tenn. Code Ann. §§ 39-13-101 -- 102 (1)(B).

Our task under Anthony is to apply those statutes narrowly, "so as to make [their] reach fundamentally fair and to protect the due process rights of every citizen, even those charged with robbery, rape, or the like." See 817 S.W.2d 299, 306 (Tenn. 1991). In this case, we find that the application of both the especially aggravated kidnapping statute and the aggravated assault statute does not offend the principles of due process announced in Anthony. The offenses of especially aggravated kidnapping and aggravated assault are defined separately in the Tennessee Code, and each offense requires proof of distinct elements that the other does not. Furthermore, unlike the robbery and kidnapping offenses in Anthony, neither offense in this case inherently proves the statutory elements of the other.

Moreover, we find from the record that the appellant had technically completed the especially aggravated kidnapping before he assaulted the victim with his gun. The evidence shows that the appellant grabbed Wilson by her arm and threatened to shoot her with his wielded gun if she did not accompany him to his car. That act alone substantially interfered with Wilson's liberty and was sufficient to constitute especially aggravated kidnapping. As the struggle continued, the appellant kept Wilson from returning to her car before he struck her on the head with his gun.

From that evidence, we find that appellant's aggravated assault was not essentially incidental to the kidnapping offense within the meaning of Anthony. The evidence necessary to prove especially aggravated kidnapping did not inherently prove aggravated assault. Furthermore, under the particular facts of this case, appellant's aggravated assault subjected the victim to a "'substantially increased risk of harm over and above that necessarily present in the crime of [especially aggravated kidnapping] itself.'" See Anthony 817 S.W.2d at 307. We therefore conclude that the appellant was properly convicted and sentenced on the charges of especially aggravated kidnapping and aggravated assault.

9

**III.**

The appellant next challenges the length of his sentences. He contends that the maximum sentences within Range I are unwarranted by the factual circumstances of both offenses. We find that appellant's twenty-five year sentence for especially aggravated kidnapping is supported by the record; however, we modify his sentence for the aggravated assault conviction.

When a defendant complains of his or her sentence, we must conduct a *de novo* review of the record. See Tenn. Code Ann. § 40-35-401(d) (1990). The sentence imposed by the trial court is accompanied by a presumption of correctness and the appealing party carries the burden of showing that the sentence is improper. See Tenn. Code Ann. § 40-35-401(Sentencing Commission Comments). This presumption, however, is conditioned upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. See State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

A portion of the Sentencing Reform Act of 1989, codified at Tennessee Code Annotated section 40-35-210, mandates the court's consideration of the following:

> (1) The evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in his own behalf about sentencing.

See Tenn. Code Ann. § 40-35-210 (Supp. 1996).

At the time of appellant's offense, the minimum sentence within the set range was the presumptive sentence for a Class A felony. If there were enhancing and mitigating factors, the trial court was required to start at the minimum sentence in that range and enhance the sentence as appropriate for the enhancement factors and then reduce the sentence as appropriate for the mitigating factors. If there were no

mitigating factors, the court could set the sentence above the minimum in that range but still within the range. See Tenn. Code Ann. § 40-35-210(d)-(e) (Supp. 1996).

The trial court sentenced appellant, as a Range I offender, to the maximum twenty five (25) years for especially aggravated kidnapping and the maximum six (6) years for aggravated assault.[5] The trial court found the following enhancement factors: (1) The appellant has a previous history of criminal behavior; (5) The appellant treated a victim with exceptional cruelty during the commission of the offense; (10) The appellant had no hesitation about committing a crime when the risk to human life was high; and (12) The appellant willfully inflicted bodily injury upon another person during the commission of the felony. See Tenn. Code Ann. § 40-35-114 (1), (5), (10), (12) (Supp. 1996). The trial court declined to find any mitigating factors despite the submission of eleven character references, evidence that appellant has a very low IQ, and evidence that he was intoxicated at the time of the offenses.

The appellant first challenges the application of enhancer (1) to his convictions of especially aggravated kidnapping and aggravated assault. Tenn. Code Ann. § 40-35-114(1). He contends that the use of enhancer (1) was improper because his prior criminal history consists solely of his juvenile record. Our supreme court, however, has held that trial courts may consider juvenile records when evaluating a defendant's history of criminal behavior. See State v. Adams, 864 S.W.2d 31, 34 (Tenn. 1993). It serves no societal interest, nor does it protect the public to deny the sentencing authority the benefit of considering the appellant's past history of criminal activity merely because it occurred when he was a juvenile. See id.

The record shows that appellant committed grand larceny and breaking and entering on two separate occasions. Those charges were combined for purposes of

---

[5]For Range I standard offenders, a Class A felony carries a sentencing range of fifteen (15) to twenty five (25) years. See Tenn. Code Ann. § 40-35-112 (a)(1) (Supp. 1996). Class C felonies, for Range I offenders, carry a possible sentence of three (3) to six (6) years. See Tenn. Code Ann. § 40-35-112 (a)(3).

punishment. That evidence demonstrates a previous history of criminal behavior and supports the application of enhancer (1).

The appellant also challenges the application of the "exceptional cruelty" enhancer. Tenn. Code Ann. § 40-35-114(5) (Supp. 1996). He argues that cruelty is inherent in the offenses of especially aggravated kidnapping and aggravated assault and that no specific facts support the application of that enhancer. We disagree with both contentions.

Initially, we acknowledge that the trial court should have stated on the record the particular actions of the appellant, apart from the elements of the offenses, which constitute exceptional cruelty. See State v. Chad Douglas Poole, No. 02S01-9607-CC-00064 (Tenn. Crim App., at Jackson, May 12, 1997). Nevertheless, our *de novo* review of the record reveals that there was sufficient evidence to support the trial court's finding that appellant treated the victim with exceptional cruelty during the commission of the offenses.

As the trial court found, appellant struck Wilson over the head with a gun, causing an injury and extensive bleeding. He used violent force to confine her in his car and he tormented her by repeatedly threatening to take her life. We also find additional evidence to support a finding of cruelty. The appellant apparently realized that Wilson was bleeding profusely, as demonstrated by the bloody seat and significant blood on her jacket, and he inquired as to whether she would live. When she stated "No," the appellant callously replied that he should go ahead and shoot her if she were going to die anyway. The appellant showed absolutely no remorse or concern over Wilson's well being despite her head injury. Moreover, his feigned concern and callous remarks were extraordinarily heartless.

The appellant, nevertheless, argues that the "exceptional cruelty" enhancer is not applicable in this case because it is an essential element of especially aggravated kidnapping and aggravated assault. We disagree. First, the facts necessary to

12

demonstrate "exceptional cruelty" are not inherent in every especially aggravated kidnapping, nor are they elements of that offense. See Tenn. Code Ann. § 39-13-305 (1991). The evidence of appellant's cruel treatment of the victim went over and above that necessary to prove the kidnapping charge. Therefore, the application of enhancer (5) is not barred on that basis.

As applied to the conviction of aggravated assault, we also find that the use of enhancer (5) was proper. "Exceptional cruelty" is not an essential element of aggravated assault. See Tenn. Code Ann. § 39-13-102 (1991). Moreover, proof of assault with a deadly weapon, which is an element of aggravated assault, is not the only evidence sufficient to support the application of that enhancer. See State v. Poole, 945 S.W.2d 93, 98 (Tenn. 1997). In this case, we find that the appellant exhibited cruelty over and above the act of striking Wilson with a gun. The record reflects that he forced Wilson to remain with him in his car where he repeatedly pointed his gun at her and threatened to end her life. Despite her head injury and extensive bleeding, the appellant did not allow her to seek medical attention. Instead, he indicated a willingness to shoot her if she were going to die anyway. From that evidence, we conclude that the trial court properly applied enhancer (5) to increase the appellant's sentences.

The appellant next contends that the trial court erred in applying the "risk to human life" enhancer. Tenn. Code Ann. § 40-35-114(10) (Supp. 1996). He first argues that when especially aggravated kidnapping is accomplished with a deadly weapon, enhancer (10) is inherent in that offense. We agree. This Court has previously held that a risk to human life is inherent in the offense of especially aggravated kidnapping. See State v. Timothy L. Laster, No. 03C01-9507-CR-00194 (Tenn. Crim. App., at Knoxville, July 9, 1996), per. app. denied (Tenn. 1996); State v. Ronald Collier, No. 02C01-9402-CC-00029 (Tenn. Crim. App., at Jackson, October 5, 1994). Although not a designated element of the offense, any enhancement factor

13

which is inherent in the offense itself may not be used to increase the defendant's sentence. See State v. Claybrooks, 910 S.W.2d 868, 872 (Tenn. Crim. App. 1994), *per. app. denied* (Tenn. 1995) (citations omitted). Therefore, enhancer (10) was incorrectly applied to the appellant's kidnapping conviction.

The appellant also asserts that enhancer (10) was improperly applied to his aggravated assault conviction. The aggravated assault in this case consisted of bodily injury inflicted upon Wilson with a deadly weapon, to wit: a gun. See Tenn. Code Ann. § 39-13-102 (a) (1991). Although we fully appreciate the extent of Wilson's injuries, we find that the appellant's aggravated assault with a deadly weapon inherently included a high risk to human life.[6] There is no evidence to demonstrate the existence of a high risk to human life other than the essential elements of the charged offenses. Therefore, we conclude that enhancer (10) should not have been applied to the assault conviction in this case. See State v. Hill, 885 S.W.2d 357, 363 (Tenn. Crim. App. 1994), *per. app. denied* (Tenn. 1994).[7]

The appellant next challenges the application of enhancer (12) pertaining to the willful infliction of bodily injury during the commission of the felony. Tenn. Code Ann. § 40-35-114(12) (Supp. 1996). He contends that enhancer (12) is inapplicable as an element of the offenses.

First, we find that especially aggravated kidnapping, accomplished with the use of a deadly weapon, does not necessarily entail the infliction of willful bodily injury on a victim. A kidnapper may simply use the presence of a deadly weapon to coerce and

---

[6]See State v. Hill, 885 S.W.2d 357, 363 (Tenn. Crim. App. 1994) *per. app. denied* (Tenn. 1994) (holding that enhancer (10) is inherent in the offense of aggravated assault). See also State v. Ronald Collier, No. 02C01-9402-CC-00029 (Tenn. Crim. App., at Jackson, Oct. 5, 1994) (holding that especially aggravated kidnapping, involving the use of a deadly weapon, inherently included a high risk to human life); State v. Roger Stewart, No. 01-C-019012-CR-00342 (Tenn. Crim. App., at Nashville, Aug. 30, 1991) (holding that armed robbery inherently included a high risk to human life).

[7]Our holding is limited to the facts of this case. We do not conclude that enhancer (10) is never applicable to aggravated assault with a deadly weapon. To the contrary, there are cases where the application of enhancer (10) would be proper. For example, if the appellant's aggravated assault had placed people, other than the victim, at a high risk of injury, then enhancer (10) would apply to his aggravated assault conviction. See State v. Sims, 909 S.W.2d 46, 50 (Tenn. Crim. App. 1995) (holding that enhancer (10) was applicable to aggravated robbery where the defendant placed other potential victims at risk of injury).

14

detain the victim without ever inflicting bodily injury. Thus, the appellant's conduct in this case supports the application of enhancer (12) to his kidnapping conviction. He acted beyond the mere statutory elements of especially aggravated kidnapping and intentionally struck the victim over the head with his weapon, causing bodily injury.

We find, however, that enhancer (12) should not have been applied to the aggravated assault conviction. This Court has previously held that enhancer (12) is already included in the offense of aggravated assault. See State v. Tony Von Carruthers, No. 02C01-9102-CR-00019 (Tenn. Crim. App., at Jackson, Aug. 7, 1991). In this case, the bodily injury inflicted upon Wilson was an essential element of aggravated assault. Therefore, the application of enhancer (12) was not proper.

The appellant next contends that the trial court erred in not finding any mitigating factors. We disagree. Appellant has failed to demonstrate how his age or his relatively low intelligence level mitigate his criminal actions. Moreover, we decline to find that his alleged intoxication was relevant in mitigating his culpability. The trial court did not err in refusing to apply mitigating factors.

In summary, we find that the trial court erred in applying enhancer (10) to the kidnapping conviction and enhancers (10) and (12) to the aggravated assault conviction. Accordingly, we conclude that the six-year sentence for aggravated assault should be modified to four (4) years. However, regarding the twenty-five year sentence for especially aggravated kidnapping, we cannot say that the maximum sentence is unjustified. Appellant committed a particularly violent crime without any provocation and has failed to demonstrate any remorse. He terrorized a young woman, inflicted bodily injury upon her, held her captive, and threatened her life. Due to the unusual circumstances surrounding the crime and the application of three enhancement factors, the twenty-five year sentence for especially aggravated kidnapping is affirmed.

Based upon the foregoing, appellant's convictions and his twenty-five (25) year sentence for especially aggravated kidnapping are affirmed.  Appellant's sentence for aggravated assault, however, is reduced to four (4) years.

_____
WILLIAM M. BARKER, JUDGE


CONCUR:

_____
JOSEPH M. TIPTON, JUDGE


_____
CURWOOD WITT, JUDGE