# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

## STATE OF TENNESSEE v. TEDDRICK WILLIAMSON

**Direct Appeal from the Circuit Court for Tipton County**
**No. 3536     Honorable Joe H. Walker, III, Trial Judge**

---

**No. W1999-00055-CCA-R3-CD - Decided April 27, 2000**

---

The defendant appeals his conviction of especially aggravated robbery, from which he received a twenty-two year sentence to serve 100% as a violent offender. We concluded there was sufficient evidence to support the verdict including injuries sufficient to meet the definition of serious bodily injury.  Further, we concluded that the trial court did not abuse its discretion in refusing to allow cross examination regarding the victim's identifying the defendant's accomplice.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAMS, J., delivered the opinion of the court, in which WADE, P.J.,  and OGLE, J., joined.

Frank Deslauriers, Covington, Tennessee, for the appellant, Teddrick Williamson.

Paul G. Summers, Attorney General and Reporter, Patricia C. Kussman, Assistant Attorney General, Elizabeth T. Rice, District Attorney General, and James Walter Freeland, Jr., Assistant District Attorney, for the appellee, State of Tennessee.

### OPINION

The defendant, Teddrick Williamson, appeals from a Tipton County Circuit Court jury verdict of especially aggravated robbery, for which he received a sentence of twenty-two years as a 100% violent offender.  On this appeal, he asserts that:
(1) the trial court erroneously denied his motion to dismiss the charge of especially aggravated robbery;
(2) the evidence was insufficient to support the verdict; and
(3) the trial court erroneously failed to allow the defendant to fully question the police officer and the victim regarding that victim's identification of the defendant's accomplice.
We affirm the trial court's judgment.

### FACTS

### The Assault

From the jury verdict, we review the evidence in a light most favorable to the state's position. At approximately 11:15 a.m. on or about December 1, 1997, Sue Koonce answered the door to her residence. The defendant and another man were at the door, and the defendant asked for a telephone. She brought her cordless phone to the door, intending to deny the men entry to her home, but the defendant and the other man entered the residence without her permission. Both men used the phone, and the defendant then pulled a handgun, put it in her face, and said he wanted her money. As she attempted to get money from her purse, he started beating her, striking her with the gun on the back of her head, on her face, and about her shoulders. She fell to the floor, and the defendant pressed his foot on her throat until she passed out. At that point, she had observed the defendant at close distance in adequate lighting for approximately ten minutes.

She returned to consciousness under an over-turned recliner at approximately noon. Although the men had pulled the telephone from the wall, she managed to crawl to another room and call for assistance with another telephone. She was in extreme pain and was very frightened because she did not know if her attackers had left. Responding emergency personnel placed a neck brace on her and took her to the hospital, where her treatment included an overnight stay and stitches at four different places on her head.

## The Investigation

After her release from the hospital, she reviewed over one hundred photographs of suspects at the police department. She described her assailant as a black male with long, curly hair, approximately 6'1" in height, and weighing approximately 200 pounds. She tentatively identified the defendant from a 1995 photograph and then identified a more recent photograph of him in a lineup with photographs of five other subjects.

## The Trial

At a bench conference, the defendant requested permission to explore the victim's identification of Tim Frost, the defendant's alleged accomplice who had not been indicted. The defendant suggested that the victim's identification of Frost might be inaccurate, thereby explaining the state's failure to indict, and such inaccuracy would therefore question her identification of the defendant. The trial court sustained the state's objection against this line of questioning as irrelevant.

After conclusion of the state's proof, the defendant made two motions; one motion of judgment of acquittal or dismissal based on lack of proof, the other a motion to dismiss the indictment. The defendant asserted that the state had not presented medical proof of injury sufficient for a jury's finding the requisite level of serious bodily injury. See State v. Sims, 909 S.W.2d 46 (Tenn. Crim. App. 1995). The court denied both motions, holding that the seriousness of the injury was a jury issue.

The defendant testified at the trial and denied attacking or robbing Koonce; in fact, he denied even being present at the attack. In December 1997, he was residing in Munford with Lawrence

Taylor, his uncle. He asserted that he was at his uncle's home when the attack occurred.

The uncle testified that on the date of the robbery he left the defendant at the house, watching television, at approximately 10:20 a.m. to pick up his Social Security check. When he returned home at approximately 11:30 a.m., the defendant was still sitting on the couch watching television. He testified that the defendant could not leave the house on that date because his car had a malfunctioning clutch.

## ANALYSIS

### Sufficiency of evidence and severity of injuries

The jury concluded that the defendant inflicted serious injury on the victim while robbing her with a deadly weapon. The defendant challenges the sufficiency of the evidence supporting the verdict and asserts that the issue of the severity of the injuries should not have reached the jury.

"Robbery is the intentional or knowing theft of property from the person of another by violence," see Tenn. Code Ann. § 39-13-401(a), and conviction for especially aggravated robbery, a class A felony, comprises two additional requirements: (1) that the robbery has been accomplished with a deadly weapon; and (2) that the victim suffers serious bodily injury, see Tenn. Code Ann. § 39-13-403(a)-(b). At the conclusion of the state's proof, the defendant moved, unsuccessfully, to dismiss the charge of especially aggravated robbery, contending that the injuries did not constitute the "serious bodily injuries" required by statute.

This argument addresses the legal distinction between "bodily injury" and "serious bodily injury." According to the Code, "bodily injury includes a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-406(a)(2). "Serious bodily injury" involves a substantial risk of death; protracted unconsciousness; extreme physical pain; protracted or obvious disfigurement; or protracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty. See Tenn. Code Ann. § 39-11-106(34)(A)-(E).

In support of his argument, the defendant cites State v. Sims, 909 S.W.2d 46 (Tenn. Crim. App. 1995), in which a panel of this Court addressed elements of "serious physical injury." The victim in Sims received a broken nose, a bruised cheekbone, a laceration on her nose, and pain in two teeth as a consequence of the defendant's striking her once in the face with a gun. See id. at 48. This Court reduced the conviction to aggravated robbery, holding that "the enumerated portions of the definition of serious bodily injury should be read as coming from the same class of injuries." Id. at 49-50. In other words, the pain associated with the broken nose was dissimilar to injury involving "a substantial risk of death, protracted unconsciousness, protracted or permanent disfigurement or the loss or impairment of the use of a bodily member, organ or mental faculty. Id. Further, the Sims

record established insufficient causality between her having teeth extracted and the assault.[1] See id.

"We admit to the difficulty of qualifying or measuring pain" when establishing points in a continuum of potential suffering. See id. at 49. In the instant case, the victim was struck repeatedly, received stitches, and was hospitalized overnight. Most significantly, however, the victim was unconscious for approximately one-half hour, a period qualifying as "protracted." See State v. Bill Nelson Narrimore, No. 03C01-9308-CR-00276 (Tenn. Crim. App. filed January 11, 1995, at Knoxville)(unconsciousness during transport to hospital "protracted"). The statutory elements for "serious injury" are listed in the disjunctive, and this factor's presence, a separate basis for a jury's finding "serious bodily injury," therefore satisfies the statutory requirements.[2]

Having determined that sufficient evidence existed for the charge of especially aggravated injury to reach the jury, we address the defendant's asserted insufficiency of evidence. When a defendant challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." See Tenn. R. App. P. 13(e). In determining the sufficiency of the evidence, this Court neither reweighs nor re-evaluates the evidence. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. See Liakas v. State, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the party prevailing at trial the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. See State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of facts, not this Court. Id. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), the Tennessee Supreme Court stated, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Because a verdict of guilty removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact. See State v. Tuggle, 639 S.W.2d 913,

---

[1] The treating physician in Sims testified that he would have been surprised "if the victim's injury precipitated the need for her teeth to be extracted." Id. at 49. The failure to establish causality between the attack and subsequent extraction of her teeth precluded application of the factor regarding disfigurement. See id.

[2] The defendant asserts that insufficient correlation was established between a man of at least 200 pounds standing on the victim's throat and her period of unconsciousness. Compare with Sims, 909 S.W.2d at 49-550. (Insufficient proof of causal link between assault and subsequent extraction of teeth). Granted, no expert testimony exists in this record regarding that causal link, but we feel that the jury was qualified to conclude causation.

914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

The defendant's argument on this issue has two prongs. First, the defendant points to certain elements and circumstances of the victim's identification of the defendant as the assailant.[3] He specifically notes that the victim:
  (1) was not wearing glasses at the time of the assault;
  (2) may have been, according to hospital records, drinking at the time of the assault;
  (3) underestimated the defendant's weight; and
  (4) passed over his photograph in lineups before identifying him.

The proof, however, indicated that the victim was in close proximity with the defendant for approximately 10 minutes during the attack. She testified that she had "pretty good" eyesight without her glasses, worn primarily for reading. Although medical records indicated an odor of alcohol on her breath, she denied either drinking that day or telling hospital employees that she had consumed alcohol. No tests were taken at the hospital to confirm the presence of alcohol in her blood. She tentatively identified the defendant from a photograph taken in 1995, and she identified him when presented with a more recent photograph in a lineup. She also identified the defendant at the preliminary hearing.

Second, the defendant offered evidence regarding an alibi. The defendant and his uncle testified that the defendant had been at his uncle's home during the time of the robbery. The uncle testified that he left the defendant at the home at approximately 10:20 a.m. and returned at approximately 11:00 a.m. to find the defendant still on the couch. The uncle further testified that the defendant's vehicle was inoperable.

The jury was presented with the evidence and with the alibi testimony. That body resolved any discrepancies and evaluated the credibility of the witnesses. These issues have no merit.

**Admissibility of evidence**

In a similar vein to the defendant's asserted insufficiency of the evidence regarding the victim's identification, he argues that the trial court erroneously sustained the state's objection to a certain line of questioning, thereby precluding an inquiry into the victim's ability to properly identify the defendant. The defendant sought to question the victim and an investigator regarding the victim's preliminary hearing identification of the defendant's alleged accomplice. At the time of the trial, this alleged accomplice, identified by the victim as the defendant's accomplice, had not been indicted on the robbery. The defendant argues that this subject had not been indicted because the victim's identification of him was suspect. Thus, continues the argument, this uncertainty bleeds over to her identification of the defendant.

---

[3] This argument partially reflects the defendant's assertions regarding alleged improper photograph lineups. He does not, however, assert this issue on this appeal.

If evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, then that evidence is relevant and, as a threshold matter subject to other evidentiary restrictions, admissible. <u>See</u> Tenn. R. Evid. 401. Trial courts have broad discretion in determining relevance, and absent a clear showing of abuse of this discretion, this Court will not overturn trial rulings or admissibility. <u>See</u> <u>State v. Bigbee</u>, 885 S.W.2d 797, 806 (Tenn. 1994).

We do not find a clear showing of abuse in this matter. Although the trial court did not make their inquiry into the status of Frost's case, various possible bases exist for the state's not indicting the suspect at that point in time. We are not privy to the details of investigation into that suspect; appropriately, neither was the trial court. The defendant, not Frost, was on trial. Conceivably, since the defendant was the one who actually approached the victim and repeatedly struck her, she might more clearly identify him, and his appearance might be more forcefully carved into her memory. Further, the district attorney's office has discretion, when and if, to prosecute on state criminal matters. <u>See</u> <u>Ramsey v. Town of Olive Springs</u>, 998 S.W.2d 207, 209-10 (Tenn. 1999); <u>see</u> Tenn. Const. Art. VI, § 5; Tenn. Code Ann. § 9-7-103 (1993). We find no abuse of discretion, and this issue has no merit.

## CONCLUSION

We affirm the judgment from the trial court.