STATE of Tennessee, Appellee,

v.

**Ronnie Dale SIMS, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

May 11, 1995.

Permission to Appeal Denied by Supreme Court Sept. 25, 1995.

Jeffrey A. DeVasher, Senior Assistant Public Defender, Nashville, for Appellant.

Charles W. Burson, Attorney General and Reporter, Amy L. Tarkington, Assistant Attorney General, Nashville, Victor S. Johnson, District Attorney General, Nick Bailey, Jan Bossing, Assistant District Attorneys General, Nashville, for Appellee.

## OPINION

WELLES, Judge.

This is an appeal as of right from a conviction on a jury verdict of especially aggravated robbery. The trial court sentenced the Defendant to thirty-five (35) years in the Department of Correction. The Defendant brings two issues in this appeal. His first issue is whether there was sufficient evidence to convict him of especially aggravated robbery. His second issue is whether the trial court erred in its application of statutory enhancement factors to calculate the Defendant's sentence. We modify the conviction to aggravated robbery and remand for sentencing.

The victim in this case was the hostess/cashier at the International House of Pancakes. On Easter Sunday, in 1992, the Defendant entered the International House of Pancakes around 9:00 p.m. and ordered a cup of coffee to go. When he paid for his coffee he asked the victim for change for a dollar, which she gave him. The Defendant returned around 11:00 p.m. and ordered another cup of coffee. After the Defendant paid for the coffee, the victim closed the cash drawer. The Defendant then asked for change for a dollar. When the victim opened the cash drawer, the Defendant put his left hand in the drawer. The victim shut the drawer on the Defendant's hand and held it with both hands. The Defendant pulled a gun out of his waistband and pointed it at the victim's face. He told her not to move. She jumped back and took both her hands off the

cash drawer. At this point, according to the Defendant, he struck her and the gun accidentally discharged. The victim testified that she was struck in the face either by the gun itself or by a bullet, but that she was not sure. She fell to the floor. The Defendant yanked the cash drawer out of the register and dumped the money out. While the victim was lying on the floor she started to get up, and the Defendant pointed the gun at her and told her not to move. The Defendant took the money and left the restaurant. The victim was taken to Vanderbilt Hospital for treatment. She had a broken nose and a bruised cheekbone.

### I.

■ The Defendant's first issue is whether there is sufficient evidence to prove that the victim sustained "serious bodily injury" and, therefore, convict the Defendant of especially aggravated robbery as opposed to aggravated robbery. When an accused challenges the sufficiency of the convicting evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding of the trier of fact of guilt beyond a reasonable doubt." T.R.A.P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn.Crim.App.1990).

■ In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (Tenn.1956). This court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Herrod*, 754 S.W.2d 627, 632 (Tenn. Crim.App.1988).

■ Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn.Crim. App.1987). In *State v. Grace*, 493 S.W.2d 474 (Tenn.1973), the Tennessee Supreme Court said, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *Id.* at 476.

■ Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, *id.*, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record and the inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. *Matthews*, 805 S.W.2d at 780.

■ Several witnesses testified at the trial. Some testified as to the victim's injuries. The victim testified that she received a broken nose and a bruised cheekbone from the blow to her face. She testified that the next day both her eyes were black and blue and her nose was very swollen. She had a bump on her nose until the swelling went down. The victim received a laceration across the bridge of her nose and was told at the hospital to see a plastic surgeon about it. She saw the plastic surgeon twice, but no plastic surgery was needed. She also testified that her two front bottom teeth began to hurt a few days after the incident. She went to a dentist, and he removed her teeth. She now has a partial plate. The dentist did not testify at trial. The victim also testified that she missed five weeks of work and experienced extreme physical pain over her whole face, but especially to her nose.

The paramedic who treated and transported the victim from the restaurant to the hospital testified. He was with the victim for a total of eleven minutes. The victim told him she thought she had been shot during

the incident because the gun went off, and she immediately felt a stinging sensation. He did not notice an entrance wound or an exit wound, but he treated her as if she had been shot. He testified that she did not have any signs of a head injury. Her blood pressure, heart rate and pulse rate were all normal. He also testified that she was alert and oriented, and she had not been rendered unconscious. He testified that she had a hematoma on her left cheek. He documented the laceration as a gun shot wound on his "run ticket," which the paramedics fill out for each call. He also noted on the run ticket that an empty shell casing from a bullet was on the counter next to the cash register.

The doctor who treated the victim at the hospital also testified. He stated that the victim came to the emergency room with a small laceration over the bridge of her nose, with a significant amount of swelling and bruising, which is indicative of a fractured nose. He said that there was no evidence of an entrance wound and no residue to indicate a close range gunshot wound. He concluded that the injury was not a gunshot wound but a blunt injury to the face. He stated that there was a very small chance that the laceration was a graze wound caused by a bullet. He also confirmed that the victim had a broken nose. The doctor stated that there was a considerable amount of swelling. An x-ray was done of the victim's head and no bullet was found. The doctor testified that the victim was admitted around 11:15 p.m. and discharged about 1:00 a.m. A surgical band-aid was placed over the victim's nose to bring the skin edges of the wound together. The victim was given anti-anxiety medication before she was discharged. No medication for pain was prescribed. The doctor stated that sedatives and pain killers were not generally prescribed simultaneously and that the victim's most urgent need was for a sedative.

Especially aggravated robbery requires both that the robbery be accomplished with a deadly weapon and that the victim suffer serious bodily injury. Tenn.Code Ann. § 39–13–403. Aggravated robbery requires *either*

a deadly weapon *or* serious bodily injury to the victim. Tenn.Code Ann. § 39–13–402. Serious bodily injury is defined as "bodily injury which involves: (A) A substantial risk of death; (B) Protracted unconsciousness; (C) Extreme physical pain; (D) Protracted or obvious disfigurement; or (E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty." Tenn.Code Ann. § 39–11–106(a)(33). The same definition of "serious bodily injury" is also used in aggravated assault, especially aggravated burglary and especially aggravated kidnapping.

The *ejusdem generis* canon of statutory construction is helpful when construing the enumerated definition of "serious bodily injury." According to the Sixth Edition of Black's Law Dictionary, *ejusdem generis* means when words follow an enumeration of classes of things the words should be construed to apply to things of the same general class as those enumerated.[1] Therefore, the enumerated portions of the definition of serious bodily injury should be read as coming from the same class of injuries. We do not believe that the pain commonly associated with a broken nose is extreme enough to be in the same class as an injury which involves a substantial risk of death, protracted unconsciousness, protracted or permanent disfigurement or the loss or impairment of the use of a bodily member, organ or mental faculty. We admit to the difficulty of quantifying or measuring pain.

■ While the loss of the victim's teeth *could* constitute protracted disfigurement, this loss must be proven to have been caused by the incident beyond a reasonable doubt. This was not done. The victim testified that her bottom two front teeth began to hurt four or five days after the accident. She said she went to a dentist, and he removed her teeth. The dentist did not testify. The doctor, who saw the victim upon her admission to the emergency room immediately after the incident, testified that he would be surprised if the victim's injury precipitated the need for her teeth to be extracted. He said that there

---

1. The doctrine of *ejusdem generis* has long been recognized by the Tennessee Supreme Court. *See Lyons v. Rasar*, 872 S.W.2d 895 (Tenn.1994);

*Davidson County v. Hoover*, 211 Tenn. 223, 364 S.W.2d 879 (1963); *Morgan Bros. v. Dayton Coal & Iron Co.*, 134 Tenn. 228, 183 S.W. 1019 (1916).

was neither bleeding in the victim's mouth nor any evidence of loose teeth upon her examination in the emergency room. This is not proof beyond a reasonable doubt that the incident triggered the loss of the victim's teeth.

We conclude that there is insufficient evidence to support serious bodily injury and therefore an especially aggravated robbery conviction. We conclude that the conviction must be modified to aggravated robbery.

## II.

The Defendant's second issue is that the trial court erred in the application of three enhancing factors. Even though we remand this case for sentencing on the modified conviction, we address these issues to facilitate any further review and to guide the trial court on sentencing.

The trial court applied five enhancement factors and two mitigating factors in sentencing the Defendant. The Defendant challenges the application of three enhancement factors. The first enhancement factor the Defendant argues should not have been applied is Tennessee Code Annotated section 40–35–114(13)(C), "the felony was committed while on any of the following forms of release status if such release is from a prior felony conviction: ... probation." The second enhancement factor the Defendant argues should not have been applied is Tennessee Code Annotated section 40–35–114(10), "the defendant had no hesitation about committing a crime when the risk to human life was high." The last factor the Defendant argues against is Tennessee Code Annotated section 40–35–114(16), "the crime was committed under circumstances under which the potential for bodily injury to a victim was great."

■ The Defendant argues that factor thirteen is not applicable because the Defendant was on probation from a misdemeanor, not a felony as the factor requires. We agree. This factor was erroneously applied in the case *sub judice*.

■ The Defendant argues that factors ten and sixteen should not be applied in his case because they are elements of the crime. The Defendant is correct that these factors

are elements of the crime. However, there were people other than the victim in the restaurant and therefore, other potential victims. Both factors may be applied in situations where individuals other than the victim are in the area and are subject to injury. *See State v. Makoka,* 885 S.W.2d 366, 373 (Tenn.Crim.App.), *perm. to appeal denied, id.* (Tenn.1994) (factor (10) applies when other possible victims are present, the defendant was convicted of attempted murder).

The only enhancement factor which was applied in error is Tennessee Code Annotated section 40–35–114(13)(C), committing a crime while on probation for a felony. The other four enhancement factors were properly applied in the case *sub judice.*

We modify the conviction to aggravated robbery. This case is remanded to the trial court for sentencing on this conviction.

We also point out to the trial court that there is an error in the judgment entered below. The conviction reads that it is for especially aggravated *kidnapping,* and it should be changed to aggravated robbery.

WADE and SUMMERS, JJ., concur.