# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE

## STATE OF TENNESSEE v. DARREN MATTHEW LEE

**Direct Appeal from the Circuit Court for Marshall County**
**No. 13814     Charles Lee, Judge**

---

**No. M1999-01625-CCA-R3-CD - Decided June 23, 2000**

---

A Marshall County jury convicted the appellant, Darren Matthew Lee, of one (1) count of aggravated assault, a Class C felony. The trial court sentenced the appellant as a Range II, Multiple Offender, to ten (10) years incarceration. On appeal, the appellant claims that the evidence is insufficient to sustain his conviction for aggravated assault. Specifically, he argues that there is insufficient evidence that the victim sustained "serious bodily injury" as is required for the offense. The appellant also claims the evidence of his identity as the assailant is insufficient. After thoroughly reviewing the record before this Court, we conclude that the evidence is sufficient to support the jury's finding of both serious bodily injury to the victim and that the appellant was the assailant. As a result, the judgment of the trial court is affirmed.

**T.R.A.P. 3 Appeal as of Right; Judgment of the Circuit Court of Marshall County is Affirmed.**

SMITH, J., delivered the opinion of the court, in which WILLIAMS, J., and WEDEMEYER, J., joined.

John E. Herbison, Nashville, Tennessee attorney for the appellant, Darren Matthew Lee.

Paul G. Summers, Attorney General and Reporter and Clinton J. Morgan, Assistant Attorney General attorneys for the appellee, State of Tennessee.

## OPINION

### I.

At approximately 10:00 p.m. on October 11, 1998, Wesley Carroll drove to Consumers Market, a local teen and young adult hangout, to socialize with some friends. After socializing a bit, Carroll noticed a gray automobile pull to the left side of his car, in which he was sitting. Carroll observed four (4) individuals inside the vehicle, and a man, whom Carroll later identified as the appellant, stepped outside of the car. Carroll continued to look towards the car, and the appellant asked him, "what are you looking at?" Carroll responded that he was looking at the car, and the appellant became angry. The appellant began walking towards the car and, in a raised voice, asked Carroll to step out of the car. Carroll refused, but the appellant persisted in shouting and using foul language. Trying to avoid a potentially volatile situation, Carroll pulled his vehicle to the other side

of the parking lot so that he could wash the car.[1]

The appellant paced around for a few minutes, then walked around to where Carroll had parked his vehicle. Once again, the appellant repeatedly demanded that Carroll exit his vehicle so that they could fight. Eventually, Carroll became frustrated and stepped out of his vehicle. As soon as he stepped outside, the appellant hit him in the face with his fist. Carroll testified that the appellant hit him a couple more times before he fell to the ground. At this point, the appellant began kicking him in the face, chest and ribs. Another individual who had exited the appellant's vehicle came to the appellant's assistance and kicked the victim in the back.

The assault continued for approximately a minute until the appellant and his accomplice stopped. However, prior to stopping, the appellant ripped a gold chain from the victim's neck. The appellant eventually walked away from the scene,[2] but was subsequently apprehended by an officer with the Lewisburg Police Department. The officer brought the appellant back to the scene where witnesses identified him as one of the men who assaulted the victim.

The police urged the victim to go to the hospital, but he refused. Carroll testified that, as a result of the attack, he received two black eyes and a swollen nose, and a tooth had cut through his lip so that it was torn. He suffered from headaches and soreness in his legs and was unable to work for approximately one (1) week. Carroll testified that his headaches were so severe that he could not perform his duties at work for between three (3) and four (4) weeks after the attack. Several days after the attack, the victim sought medical treatment from his family physician.

Dr. Benny McKnight, the victim's physician, testified at trial that he saw the victim approximately three (3) days after the incident. Dr. McKnight stated that the victim had two large swollen, black eyes and complained of severe headaches, dizziness, nose bleeding and problems with his teeth. Because he was concerned that Carroll might have sustained skull fractures as a result of the beating, the doctor obtained x-rays of the victim's skull. Fortunately, no internal injuries were discovered, but Dr. McKnight testified that the victim suffered from an abnormally high level of pain for the injuries he sustained. He stated that it was the victim's excessive pain which gave him concern about the possibility of internal injuries. Dr. McKnight testified that he prescribed medication for the victim's pain.

The jury found the appellant guilty of one (1) count of aggravated assault by causing serious bodily injury to the victim.[3] The trial court sentenced the appellant as a Range II, Multiple Offender, to ten (10) years incarceration. From his conviction, the appellant now brings this appeal.

## II.

In his sole issue on appeal, the appellant challenges the sufficiency of the convicting

---

[1] Carroll testified that there was a car wash behind the Consumers Market building.

[2] The appellant's accomplice, who was identified at trial as Eric Jett, a.k.a. Eric Armstrong, also fled the scene on foot.

[3] The appellant was also indicted in Count Two with aggravated assault by the use of a deadly weapon, to wit: a "shoe clad foot." The jury acquitted the appellant of this count.

evidence. First, he argues that the state failed to present proof that the victim sustained "serious bodily injury" as interpreted by this Court in previous decisions. Secondly, he claims that, even if there was sufficient evidence presented that the victim sustained "serious bodily injury," the proof was insufficient to show that the appellant, as opposed to the other assailant, actually inflicted those injuries.

**A.**

When an appellant challenges the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). On appeal, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. Bigbee, 885 S.W.2d at 803; Harris, 839 S.W.2d at 75. This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

**B.**

In his first challenge to the sufficiency of the evidence, the appellant contends that the state failed to present proof that the victim suffered "serious bodily injury." Specifically, he cites this Court's decision in State v. Sims, 909 S.W.2d 46 (Tenn. Crim. App. 1995), and asserts that the pain associated with the victim's injuries in this case was inadequate to constitute "extreme physical pain" under the definition of "serious bodily injury."

In order to prove that the appellant committed an aggravated assault, the state was required to show that the appellant intentionally or knowingly caused serious bodily injury to another. Tenn. Code Ann. §§ 39-13-101(a)(1), 39-13-102(a)(1)(A). "Serious bodily injury" is defined as "bodily injury which involves: (A) A substantial risk of death; (B) Protracted unconsciousness; (C) Extreme physical pain; (D) Protracted or obvious disfigurement; or (E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty." Tenn. Code Ann. § 39-11-106(a)(34).

In State v. Sims, the defendant robbed at gunpoint the cashier at an International House of Pancakes restaurant. During the robbery, the defendant struck the victim in her face with his gun, and she suffered from a broken nose and a bruised cheekbone as a result. Sims, 909 S.W.2d at 47-48. The defendant was convicted of especially aggravated robbery by causing serious bodily injury to the victim and, on appeal, claimed that the victim's injuries did not constitute "serious bodily injury" as defined in the statute. This Court agreed, finding that the victim did not suffer from "extreme physical pain" as urged by the state. Id. at 49. In making its determination, this Court applied the *ejusdem generis* doctrine of statutory construction and held:

> *ejusdem generis* means when words follow an enumeration of classes of things the
> words should be construed to apply to things of the same general class as those

enumerated.  Therefore, the enumerated portions of the definition of serious bodily injury should be read as coming from the same class of injuries.  We do not believe that the pain <u>commonly associated</u> with a broken nose is extreme enough to be in the same class as an injury which involves a substantial risk of death, protracted unconsciousness, protracted or permanent disfigurement or the loss or impairment of the use of a bodily member, organ or mental faculty. (emphasis supplied)

<u>Id.</u> Because the Court determined that the evidence did not support the jury's finding that the victim suffered "serious bodily injury," the Court modified the appellant's conviction to aggravated robbery. <u>Id.</u> at 50.

The appellant argues that, because the victim's injuries in this case were very similar to the injuries sustained by the victim in <u>Sims</u>, his conviction must be modified from aggravated assault to simple assault.  We do not agree.

The facts of this case are clearly distinguishable from the facts in <u>Sims</u>.  The victim in <u>Sims</u> was struck once with a handgun and received a broken nose, a laceration across her nose, some facial swelling and a bruised cheekbone.  She complained of dental pain several days after the incident; however, there was no evidence that the dental problems were caused by the defendant's assault on the victim.  In addition, although the victim testified that she experienced extreme physical pain over her face, no pain medication was prescribed for her injuries.  <u>Id.</u> at 48-49.  In addition, there was no testimony that the victim's pain was over and above that commonly associated with a broken nose.

On the other hand, in this case the victim was kicked repeatedly in the face for a period of time.  The victim received two black eyes, severe facial swelling, and his lip was torn.  Bystanders who witnessed the incident described the victim's face as "swollen" and "bloody."  One witness testified at trial, ""[i]t just looked like someone had just absolutely - - if you could just imagine someone having their [sic] head beat in.  That is just what it looked like."  Carroll was unable to work for at least a week, and for approximately three (3) to four (4) weeks after the assault, he suffered from headaches that made him unable to adequately perform his duties at work.  The victim testified at trial that he suffered from "extreme physical pain" as a result of his injuries.

Dr. McKnight, the victim's physician who treated him several days after the incident, testified that the victim had two large contusions in both of his eyes, and there was swelling in the area as well.  The victim complained of severe headaches, dizziness, nose bleeding and problems with his teeth.  Because the victim was experiencing a great amount of pain, Dr. McKnight became concerned about possible skull fractures as a result of the assault.  Additionally, although the victim did not receive any internal injuries, the doctor stated that the act of kicking a person in the orbits of the eyes could result in death.  The doctor testified that he prescribed medication for the victim's pain, which was apparently more severe than the injuries would normally have occasioned.

We acknowledge that this Court has held that "the pain commonly associated with a broken nose is [not] extreme enough" to constitute "serious bodily injury."  <u>Sims</u>, 909 S.W.2d at 49.  However, Dr. McKnight testified that the victim suffered from an abnormal level of pain than that typically associated with his injuries.  Because the victim experienced a greater amount of pain than that "commonly associated" with his injury, we believe that the facts of this case are distinguishable from <u>Sims</u>.  Moreover, after viewing the evidence in the light most favorable to the state, we conclude that there is sufficient evidence in the record that the victim suffered from "extreme

physical pain" and, thus, sustained "serious bodily injury."

This issue is without merit.

## C.

The appellant further alleges that, even if the evidence is sufficient to support the jury's finding that the victim sustained "serious bodily injury" as a result of the assault, the evidence does not establish that the appellant, as opposed to the other assailant, actually inflicted the "serious bodily injury." To the contrary, there is substantial evidence in the record that the appellant inflicted the victim's injuries. The victim testified that the appellant kicked him repeatedly in the face, chest and ribs. Additionally, several witnesses testified at trial that both the appellant and his accomplice kicked the victim in the head. Indeed, one witness stated that she observed the appellant's accomplice holding Carroll while the appellant kicked him in the head.

The appellant claims that because both men were observed kicking the victim, the state was required to prove beyond a reasonable doubt the precise injuries the appellant inflicted in order to demonstrate that the appellant inflicted "serious bodily injury." In support of his position, the appellant cites State v. Hix, 696 S.W.2d 22, 24-25 (Tenn. Crim. App. 1984). However, the appellant's reliance on Hix is misplaced. In Hix, the defendants were convicted for the assault and battery and child abuse of their six (6) week old son. The state presented medical testimony concerning the nature of the child's injuries and other evidence which indicated that the child's parents were responsible for his injuries. Hix, 696 S.W.2d at 23-24. The state presented no direct evidence implicating either defendant, but merely presented circumstantial evidence that possibly linked either, or both defendants to the crime. Id. at 24-25. This Court reversed, holding that because the defendants' convictions were based upon circumstantial evidence alone, the evidence was insufficient to prove beyond a reasonable doubt which defendant committed the offenses. Id. at 25.

In this case, the state presented direct testimony from several witnesses who observed the appellant inflicting injury to the victim. Clearly, the evidence implicating the appellant was overwhelming. Thus, we conclude that the state presented more than sufficient evidence that the appellant intentionally or knowingly inflicted "serious bodily injury" on the victim.

This issue has no merit.

## III.

After thoroughly reviewing the record before this Court, we conclude that there is sufficient evidence in the record to support the appellant's conviction for aggravated assault. Accordingly, the judgment of the trial court is affirmed.