IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 3, 2000

## STATE OF TENNESSEE v. JIMMY EDWIN HARBER, JR.

**Direct Appeal from the Circuit Court for Crockett County**
**No. 3141     Mark Agee, Judge**

---

**No. W2000-00462-CCA-R3-CD**
**Filed December 27, 2000**

---

While driving under the influence of alcohol, the defendant lost control of his pickup truck and crashed into a road embankment, causing the death of one of his five teenaged passengers. He pled guilty to vehicular homicide by intoxication as to the passenger who died, and to reckless endangerment with a deadly weapon as to all other passengers, agreeing to allow the trial court to set his sentences. Applying enhancement factors (10) and (16), the trial court sentenced the defendant as a Range I, standard offender to ten years for the vehicular homicide conviction, and two years for the reckless endangerment conviction, with the sentences to be served concurrently. The defendant appeals the sentencing, arguing that the trial court erred in its application of enhancement and mitigating factors, and that he should have been granted probation. Based upon our review of the record and of applicable law, we conclude that the enhanced sentences are supported by the record, and that the trial court, therefore, committed no error in its failure to grant probation. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Tom W. Crider, District Public Defender, and Joyce Diane Stoots, Assistant Public Defender, for the appellant, Jimmy Edwin Harber, Jr.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Clayburn L. Peeples, District Attorney General; and Edward L. Hardister, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, Jimmy Edwin Harber, Jr., pled guilty to vehicular homicide by intoxication, a Class B felony, and reckless endangerment committed with a deadly weapon, a Class E felony.

Applying enhancement factors (10) and (16), the trial court sentenced him to ten years imprisonment and a fine of $10,000 for the vehicular homicide conviction, and two years for the reckless endangerment conviction. The court ordered that the sentences be served concurrently. The defendant appealed, raising the issue of whether the trial court erred in sentencing him to an enhanced sentence of ten years imprisonment, without probation.

After a thorough review of the record and of applicable law, we affirm the judgment of the trial court.

## FACTS

At approximately 9:00 p.m. on December 14, 1998, the nineteen-year-old defendant, driving in Crockett County with five of his teenaged friends, lost control of his pickup truck on a country road and crashed into a road embankment. Sixteen-year-old Sammie Leigh Jones, thrown through the windshield on impact, was pronounced dead at the scene.

Earlier in the evening, Jones had sung at a high school musical program in Alamo, Tennessee. The defendant spent that time driving around with twenty-two-year-old William Carl Glidwell and drinking beer. Around 8:30 p.m., after the musical program was over, Jones and four other teenagers met the defendant at the town's court square. The defendant offered the five young people a ride in his new truck. They accepted, apparently unaware that the defendant had been drinking. They were also unaware that Glidwell had recently exited the truck, refusing to ride any further with the intoxicated defendant.

Accounts of the incident given by the surviving teenagers to the Tennessee Highway Patrol establish that after the five climbed into his truck, the defendant raced through town and down small country roads at speeds in excess of seventy miles per hour, flying across Highway 412, a major highway, without stopping. According to fifteen-year-old Bonnie Barrett, the defendant laughed when he ran a stop sign, with his headlights turned off, in front of an oncoming car. Barrett said that at times the defendant drove on the left side of the road, that his speed approached eighty miles per hour both in town and in the country, and that Jones, prior to the crash, pleaded with him to "slow down for her." Nineteen-year-old John Eric McGee said that he also asked the defendant, several times, to slow down, but that the defendant paid no heed to his warning that they were going "too fast for little country back roads."

Following a curve and a hill on one such small country road, the defendant lost control of his truck, which first went off the road to the right, and then, after the defendant jerked the steering wheel, slid sideways across the roadway and struck an embankment on the left. The force of the impact threw Jones through the windshield, where she landed in the road, with the truck coming to rest on its right side on top of her.

The defendant admitted having drunk "two or three beers" before picking up his passengers. Glidwell, however, told Tennessee Highway Patrol officers that the defendant had been drinking a

beer when he picked him up at 6:30 that evening, and that he drank four or five more beers during the time that Glidwell spent with him.

At the sentencing hearing, Jones' mother read a letter in which she expressed her anger at the defendant, and her anguish that her daughter's life had been so senselessly cut short. She asked that the court impose the maximum possible sentence on the defendant, to send a message to others that drunk driving would not be tolerated.

The defendant expressed remorse at having caused the death of Jones, whom he said had been a very close friend. He acknowledged his arrest, after the wreck, on alcohol and drug charges. He explained the arrest, however, by stating that he had turned to alcohol and marijuana as a means of coping after the wreck, as "the only way [he] knew to take [his] mind off of everything." He stated that he never intended to drink again.

The defendant's mother said that, if the trial court sentenced him to alternative sentencing or probation, she would allow the defendant to live at home and would assist him in meeting the terms of his sentence. The defendant's former employer, a farmer for whom the defendant had worked part-time from the age of eleven or twelve, testified that, if released into the community, the defendant would have a job on his farm.

The trial court found two enhancement factors under Tennessee Code Annotated Section 40-35-114 to be applicable: (10), the defendant had no hesitation about committing a crime when the risk to human life was high; and (16), the crime was committed under circumstances under which the potential for bodily injury to a victim was great. Tenn. Code Ann. § 40-35-114(10) and (16) (1997). The court found relevant mitigating factors to be the defendant's lack of judgment due to his youth, and his remorse for his actions. Tenn. Code Ann. § 40-35-113(6) and (13) (1997). Without specifically indicating the weight it was assigning to these factors, the trial court sentenced the defendant to ten years for the vehicular homicide by intoxication conviction, and two years for the reckless endangerment conviction, with the sentences to run concurrently.

## ANALYSIS

The defendant argues that the trial court erred in sentencing him by "improperly applying enhancement and mitigating factors" and "improperly not suspending the remainder of defendant's sentence and placing him on probation." The defendant contends that the trial court erred in applying enhancement factors (10) and (16) to enhance the sentences, and in failing to apply as mitigating factors: his lack of a criminal history; his exemplary behavior and work ethic exhibited during the preceding year he had spent in jail; his history of gainful employment from the age of eleven or twelve; and the fact that he pled guilty to the charges. The defendant asserts that probation, given his youth, social and employment history, lack of criminal record, and potential for rehabilitation, is appropriate in his case.

**Standard of Review**

Tennessee Code Annotated Section 40-35-401(d) provides that when an accused challenges the length, range, or manner of service of a sentence, this court is to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption, however, is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). When, as here, the trial court has failed to clearly articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence, we must review *de novo*, with no presumption of correctness given to the trial court's sentencing determinations. See State v. Jones, 883 S.W.2d 597, 599-600 (Tenn. 1994).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App.), perm. app. denied (Tenn. 1987).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentences are erroneous. Sentencing Commission Cmts. to Tenn. Code Ann. § 40-35-401; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of demonstrating that the sentences imposed by the trial court are erroneous.

**A. Vehicular Homicide Sentence**

The defendant was convicted of vehicular homicide by intoxication, "the reckless killing of another by the operation of an automobile . . . [a]s the proximate result of the driver's intoxication," Tenn. Code Ann. § 39-13-213(a)(2) (1997), a Class B felony for which a standard offender is subject to a sentence ranging from eight to twelve years. The defendant contends that the trial court erred in applying enhancement factors (10) and (16) to enhance his sentence for vehicular homicide by intoxication from the presumptive minimum sentence of eight years to ten years. The defendant argues that factor (16) cannot be used to enhance a sentence for vehicular homicide, and that factor (10) should not be applied in cases where the only persons subject to risk by the defendant's actions are his victims. The defendant asserts that the record in this case contains no evidence that his actions placed anyone, other than his five passengers, at risk. He argues that, because he pled guilty to reckless endangerment with regards to the four surviving passengers, the trial court erred in applying factor (10) to enhance his sentence for vehicular homicide.

We agree that factor (10) should not be applied when there is no evidence that the defendant's actions caused a high risk of death to anyone other than his victims. See State v.

<u>Bingham</u>, 910 S.W.2d 448, 452-53 (Tenn. Crim. App. 1995); <u>State v. Sims</u>, 909 S.W.2d 46, 50 (Tenn. Crim. App. 1995); <u>State v. Makoka</u>, 885 S.W.2d 366, 373 (Tenn. Crim. App. 1994). We also agree that, because the defendant received a separate conviction for reckless endangerment as to the surviving passengers, the applicability of factor (10) cannot, as the State argues, be based on the risk his actions caused to those passengers. <u>See</u>, <u>e.g.</u>, <u>State v. Ricky Williams</u>, No. E1999-00344-CCA-R3-CD, 2000 WL 772748, at *3 (Tenn. Crim. App. June 15, 2000) (holding that application of factor (10), based on risk to children in house, was inappropriately applied to defendant's reckless homicide conviction when defendant received separate reckless endangerment conviction for risk caused to children). We disagree, however, with the defendant's assertion that the record contains no evidence that his actions on the evening of December 14, 1998, placed anyone other than his five passengers at risk.

Included in the record before this court is Bonnie Barrett's statement to the Highway Patrol, in which she described how the defendant ran through a stop sign, racing across the path of an oncoming car, with his truck's headlights turned off. In doing so, the defendant placed at extremely high risk not only his own passengers, but also the driver of that oncoming vehicle and any passengers that that vehicle might have carried. In light of this evidence, we conclude that enhancement factor (10) is applicable to the defendant's vehicular homicide sentence. Moreover, the egregious nature of the defendant's behavior, in deliberately running a stop sign in front of an oncoming car, with his headlights turned off, presumably to prevent the other driver from being able to see his truck and to take evasive measures to prevent a collision, justifies placing great weight on this factor.

The defendant also argues, citing, *inter alia*, <u>State v. Bingham</u>, 910 S.W.2d 448, 452 (Tenn. Crim. App. 1995), that enhancement factor (16) cannot be applied to his sentence for vehicular homicide. The various panels of this court have disagreed on whether factor (16) can be applied in cases, such as this one, in which the defendant's actions place an individual other than his victim at risk of bodily injury. In <u>State v. Sims</u>, 909 S.W.2d 46, 50 (Tenn. Crim. App. 1995), this court held that both factors (10) and (16) may be applied where individuals other than the victim are placed at risk of injury or death. Conversely, in <u>Bingham</u>, a different panel applied factor (10), but not (16), to a vehicular homicide by recklessness case in which the defendant's actions caused a risk of death and potential of bodily injury to persons other than the victim, concluding that factor (16) is an essential element of vehicular homicide by recklessness.

Following the <u>Bingham</u> decision, some panels have resolved the apparent conflict by noting that the statutory language of enhancement factor (16), unlike that of (10), requires that the potential of bodily injury be to *a victim*. These panels have concluded, based on the language of the statute, that the factor may not be applied unless the potential of bodily injury is to the victim of the crime. <u>See</u> <u>State v. Joseph Oscar Price, III</u>, No. 01C01-9810-CR-00421, 1999 WL 1063414, at *5 (Tenn. Crim. App. Nov. 24, 1999), <u>perm</u>. <u>app</u>. <u>denied</u> (Tenn. 2000); <u>State v. Charles Justin Osborne</u>, No. 01C01-9806-CC-00246, 1999 WL 298220, at *3 (Tenn. Crim. App. May 12, 1999). Nonetheless, other panels have continued to find factor (16) applicable in cases in which the circumstances surrounding the defendant's offense create the potential for bodily injury to someone other than the

actual victim of the crime. See State v. Terrence T. Wiggins, No. 01C01-9806-CR-00241, 1999 WL 447322, at *3 (Tenn. Crim. App. July 1, 1999). We need not resolve the issue in this case, however, because we conclude that the heavy weight carried by factor (10) is more than sufficient, alone, to support the ten-year sentence imposed by the trial court.

In reaching this conclusion, we have considered, and rejected, the defendant's assertion that the trial court erred in failing to consider as mitigating factors: his exemplary behavior while in jail awaiting trial; his lack of a criminal record; his employment record; and the fact that he pled guilty to the charges. We also reject the defendant's assertion that the trial court failed to give appropriate weight to his remorse and lack of judgment due to his youth. Under the circumstances, the defendant's remorse and lack of judgment due to his youth, although relevant, carry significantly less weight than the fact that his actions caused a high risk to human life. In light of the strength of enhancement factor (10) in this case, we conclude that the ten-year sentence imposed by the trial court is not excessive.

Since the defendant received a sentence of greater than eight years, he was not eligible for probation. See Tenn. Code Ann. § 40-35-303(a)(1997). We, therefore, affirm the ten-year sentence for vehicular homicide by intoxication, and the denial of probation.

## B. Reckless Endangerment Sentence

Reckless endangerment committed with a deadly weapon is a Class E felony. Tenn. Code Ann. § 39-13-103 (1997). The sentencing range established for a Range I, standard offender convicted of a Class E felony is a minimum of one year and a maximum of two years. Tenn. Code Ann. § 40-35-112(a)(5) (1997). The State argues that there is no evidence in the record that the trial court applied the enhancement factors it cited, (10) and (16), to anything but the defendant's sentence for vehicular homicide. That the trial court applied these factors to the reckless endangerment sentence is obvious, however, from the fact that the trial court imposed the maximum sentence of two years for the crime, rather than the presumptive minimum sentence of one year.

The defendant argues that the trial court's application of these enhancement factors to his reckless endangerment sentence was error. He contends that factors (10), "[t]he defendant had no hesitation about committing a crime when the risk to human life was high," and (16), "[t]he crime was committed under circumstances under which the potential for bodily injury to a victim was great," Tenn. Code Ann. § 40-35-114(10) and (16) (1997), are both essential elements of his crime of reckless endangerment with a deadly weapon, which is defined as occurring when a person "recklessly engages in conduct which places or may place another person in imminent danger of death or serious bodily injury . . . committed with a deadly weapon[.]" Tenn. Code Ann. § 39-13-103 (1997). As such, he asserts that they should not have been used to enhance his sentence. We disagree.

Enhancement factors may be applied to a defendant's sentence only when they are "appropriate for the offense" and "not themselves essential elements of the offense." Tenn. Code

Ann. § 40-35-114 (1997). The test for determining whether an enhancement factor is an essential element of the offense is whether the same proof used to establish an element of the offense is also used to establish the enhancement factor. If it is, then the enhancement factor may not be applied to enhance the sentence imposed for the offense. State v. Jones, 883 S.W.2d 597, 601 (Tenn. 1994) If, however, a different fact from that used to establish the offense supports application of the enhancement factor, the factor may appropriately be applied. Id.

In this case, the defendant was convicted of reckless endangerment for recklessly engaging in conduct which placed his four surviving passengers in imminent danger of death or serious bodily injury. Factors (10) and (16) are appropriate to the reckless endangerment conviction because the defendant, in running the stop sign in front of an oncoming car, also created a high risk of death and great potential for bodily injury to the driver and possible passengers of that car. See State v. Charles Frank Bankston, No. 03C01-9608-CR-00302, 1999 WL 49897, at *22 (Tenn. Crim. App. Feb. 4, 1999), perm. app. denied (Tenn. 1999) (holding that factor (16) applied when defendant's action created potential for bodily injury to person other than the victim of the crime); State v. Randal A. Thies, No. 02C01-9708-CC-00299, 1998 WL 391813, at *6 (Tenn. Crim. App. Apr. 24, 1998) (concluding that, although the definition of reckless endangerment encompasses conduct addressed by factors (10) and (16), both factors apply when defendant's actions create risk of death and great potential of bodily injury to someone other than victim named in indictment). We conclude, therefore, that the trial court did not err in applying these factors to the defendant's sentence for reckless endangerment.

## CONCLUSION

After a review of the record and of applicable law, we conclude that the sentences imposed by the trial court are supported by the record. We, therefore, affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE