IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 3, 2004

## STATE OF TENNESSEE v. MARIO MERRITT

**Direct Appeal from the Criminal Court for Shelby County**
**No. 02-05448    James C. Beasley, Jr., Judge**

_____

**No. W2003-02868-CCA-R3-CD  - Filed November 30, 2004**

_____

The appellant, Mario Merritt, was convicted by a jury in the Shelby County Criminal Court of especially aggravated robbery. Following a hearing, the trial court sentenced the appellant to twenty-five years in the Tennessee Department of Correction. The appellant now brings this appeal challenging the sufficiency of the evidence to support his conviction. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

Marty B. McAfee, Memphis, Tennessee, for the appellant, Mario Merritt.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Amy Weirich, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

On the afternoon of June 21, 2001, Anterius Harden, a "Loss Prevention Security" employee at Goldsmith's Department Store, was on duty at the Southland Mall in Memphis. Around 5:00 p.m., Harden was monitoring the store from a control panel located in the men's department, when he noticed two men and a woman enter the men's department through the north doors. According to Harden, the three shoppers caught his attention because they began selecting clothing without checking the size or price of the items. As Harden watched the trio, he observed one of the men, later identified as the appellant, take several items of clothing, walk past the cash register, and proceed toward the north doors.

Harden immediately intercepted the appellant and identified himself as a "Loss Prevention" employee. Harden was wearing "plain clothes" and a badge around his neck. Upon being confronted, the appellant pulled out a pistol and ordered Harden "to get back, get on the ground." Harden remained standing but stepped aside to allow the appellant to "go out the door." Instead, the appellant ran toward Harden and pointed the gun in his face. Harden stated that when he attempted to grab the gun, he and the appellant "tussled" and the appellant fell back. The appellant, with the gun and merchandise in hand, began backing out of the store. Harden explained that as soon as the appellant pulled out the gun, the second man dropped the merchandise he was holding and ran from the store.

As the appellant was backing out of the store, Gary Sparks, another loss prevention employee, arrived at the north doors. Sparks held the doors to prevent the appellant from leaving. Thereupon, the appellant reached over his shoulder and shot Sparks, striking him in the left shoulder. Afterward, the appellant ran into the parking lot and fled in a vehicle.

Harden took Sparks inside the store and called police, paramedics, and the fire department. Sparks was transported by ambulance to the hospital. Harden spoke with police at the scene and provided them with two videotapes of the incident. One videotape was taken from the podium where he had been standing, and one was from a camera in the security office. At trial, Harden conceded that the videotape from the security office was unclear and difficult to see.

Several days later, an officer returned to the store and spoke with Harden and Sparks. Harden and Sparks were asked to identify the perpetrator from a photographic lineup prepared by police.[1] Harden selected the appellant's photograph from the lineup which showed six individuals. Sparks was unable to identify the appellant from the lineup, explaining that he saw only the back of the appellant's head and the left side of his face. However, both Harden and Sparks identified the appellant at a pretrial hearing and at trial.

At trial, Harden testified that he came face-to-face with the appellant and was able to identify the appellant because of his close proximity to the appellant when the appellant pointed the gun at him. On cross-examination, Harden conceded that his prior testimony regarding the appellant's height was not accurate. However, he stated that the appellant appeared larger at trial, surmising that the appellant had "probably gained a little . . . weight or whatnot."

Sparks testified at trial regarding his injuries and showed the jury the scar and disfigurement resulting from the gunshot wound. He related that he continues to have pain and problems with his shoulder, explaining that "[e]very once in awhile it swells up and hurts like when the weather starts acting up." Sparks admitted that he had initially estimated that the perpetrator was five feet, five inches tall, but he explained that the estimate may have been inaccurate because the hat worn by the perpetrator made him appear shorter.

---

[1]The record is unclear as to whether Harden and Sparks viewed the photographic lineup together or individually.

The appellant was convicted of especially aggravated robbery. Following a hearing, the trial court sentenced the appellant as a Range I violent offender to twenty-five years in the Tennessee Department of Correction, with the sentence to be served consecutively to previously imposed sentences. The appellant now brings this appeal challenging the sufficiency of the evidence to support his conviction. On appeal, the appellant argues that (1) the evidence was insufficient to show serious bodily injury; (2) the evidence was insufficient to sustain a conviction for robbery because the violence did not occur "contemporaneous with" the taking; and (3) the eyewitness identification of the appellant by the security guards was not sufficient to support the conviction.

## II. Analysis

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. Id. This court will not reweigh or reevaluate the evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (2003). Especially aggravated robbery is defined as robbery "(1) [a]ccomplished with a deadly weapon; and (2) [w]here the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-403(a) (2003).

> "Serious bodily injury" means bodily injury which involves:
> (A) A substantial risk of death;
> (B) Protracted unconsciousness;
> (C) Extreme physical pain;
> (D) Protracted or obvious disfigurement; or
> (E) Protracted loss or substantial impairment of a function of a bodily
> member, organ or mental faculty.

Tenn. Code Ann. § 39-11-106(a)(34) (2003). Alternatively, "'[b]odily injury' includes a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(a)(2).

The appellant first contends that the evidence at trial failed to establish that the victim, Sparks, suffered serious bodily injury. The appellant argues that "[t]here was absolutely no evidence that the injury caused a substantial risk of death, that the victim lost consciousness, or that the victim suffered any loss of function or impairment to his body." The appellant further argues that "[t]he evidence of pain and disfigurement was insufficient as a matter of law to meet the standards set out in Tennessee Code Annotated [section] 39-11-106(a)(34)." The State maintains that because the wound required emergency medical treatment, left a scar, and caused residual pain, Sparks suffered serious bodily injury.

In support of his argument, the appellant cites State v. Sims, 909 S.W.2d 46 (Tenn. Crim. App. 1995). In Sims, 909 S.W.2d at 48-49, the victim suffered a broken nose, a bruised cheekbone, black eyes, and a laceration across the bridge of her nose. Applying the ejusdem generis canon of statutory construction, this court concluded that "the pain commonly associated with a broken nose [was not] extreme enough to be in the same class as an injury which involves a substantial risk of death, protracted unconsciousness, protracted or permanent disfigurement or the loss or impairment of the use of a bodily member, organ or mental faculty." Id. at 49.[2]

In the instant case, the appellant argues that the gunshot wound suffered by Sparks "does not rise to the level of 'extreme' pain required under Tennessee Code Annotated [section] 39-11-106(a)." The appellant argues that Sparks did not suffer extreme pain, noting his testimony that he did not immediately realize that he had been shot. Additionally, the appellant asserts that the State offered no testimony regarding pain other than Sparks' testimony that his shoulder occasionally swells and hurts when the weather "starts acting up." The appellant also contends that the scar on Sparks' shoulder was not a "protracted or obvious disfigurement." Further, the appellant asserts that the State offered no evidence that Sparks stayed in the hospital overnight, had any significant treatment, or was prescribed medication. According to the appellant, the evidence introduced at trial was insufficient to support a finding of serious bodily injury.

We disagree with the appellant's contention. While the proof offered by the State is limited, Sparks testified at trial that he received a gunshot wound to the shoulder and was transported to the hospital for treatment. Sparks testified that he continues to have pain and swelling more than two years after he was shot. Moreover, Sparks showed the jury the scar and disfigurement that resulted from the gunshot. The jury was able to view the scar and was in a position to determine the extent of the scarring and disfigurement. We conclude that the evidence is sufficient to show that Sparks suffered serious bodily injury.

Next, the appellant argues that his actions constituted theft, not robbery. A person is guilty of theft if that person, with the intent to deprive the owner of property, knowingly obtains or exercises control over the property without the owner's effective consent. Tenn. Code Ann. § 39-14-

---

[2]"[E]jusdem generis means when words follow an enumeration of classes of things the words should be construed to apply to things of the same general class as those enumerated. Therefore, the enumerated portions of the definition of serious bodily injury should be read as coming from the same class of injuries." Sims, 909 S.W.2d at 49.

103 (2003). As previously noted, robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). The appellant contends that at the time he took the clothing and proceeded past the checkout counter, the theft had already occurred. He argues that he used force only when Harden and Sparks attempted to prevent his escape. According to the appellant, "[e]vidence that the threat or violence is used to retain property already unforcibly taken, or used to escape, is not sufficient to sustain a conviction for robbery."

In support of his argument, the appellant cites State v. Owens, 20 S.W.3d 634 (Tenn. 2000). In Owens, 20 S.W.3d at 637, the defendant grabbed an article of clothing from a store and left without paying. Two employees of the store chased the defendant for several blocks. Id. When one of the employees approached the defendant, the defendant dropped the clothing, "brandished a box cutter," and walked away. Id. The defendant was subsequently convicted of robbery. Id. Based upon these facts, our supreme court reversed the defendant's conviction of robbery and imposed a conviction of theft. Id. at 641. The court held that in order to constitute the offense of robbery under Tennessee Code Annotated section 39-13-401, "the use of violence or fear must precede or be contemporaneous with the taking of property from the person." Id.

Owens is clearly distinguishable from the instant case in which the violence was contemporaneous with the taking of the clothing. In the instant case, the appellant was intercepted by Harden after he walked past a cash register and attempted to exit the store without paying for the merchandise. Upon being confronted, the appellant pulled out a pistol and pointed it in Harden's face, ordering him to get on the ground. Thereafter, when Sparks attempted to prevent the appellant from leaving the store, the appellant shot him in the shoulder. The appellant then ran from the store and fled in a car. This issue is without merit.

Finally, the appellant challenges Harden's and Sparks' identification of the appellant as the perpetrator of the offense. Specifically, the appellant argues that his physical appearance did not match the descriptions of the perpetrator provided by Harden and Sparks prior to their viewing the photographic lineup. The appellant further argues that Sparks consistently testified that he had not seen the perpetrator's face, nor was he able to identify the appellant in the photographic lineup. The appellant contends that although both Harden and Sparks identified the appellant in court, "it was obvious at both the preliminary hearing and trial who the 'defendant' was."

This court has previously concluded that "[i]nconsistency, inaccuracy and omissions in the description of a defendant by a witness who is otherwise able to positively identify the defendant are questions for the jury to consider in determining the weight to be given the testimony." State v. Radley, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999). The jury's verdict will not be disturbed on appeal unless the inaccuracies, inconsistencies, or omissions are so improbable or unsatisfactory as to create a reasonable doubt of the appellant's guilt. Id. Moreover, the testimony of a victim identifying the perpetrator is sufficient to support a conviction. State v. Strickland, 885 S.W.2d 85, 87-88 (Tenn. Crim. App. 1993) (citing State v. Williams, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981)).

Although the record reflects some inconsistencies in the testimony of Harden and Sparks, both men identified the appellant as the perpetrator of the offense. Taken in the light most favorable to the State, the evidence at trial established that Harden was face-to-face with the appellant as the appellant held a gun to his face. Harden also testified that he observed the appellant from close range for several minutes, "tussled" with the appellant, and watched as the appellant shot Sparks while leaving the store. Additionally, Harden testified that he was able to immediately identify the appellant from the photographic lineup and "knew exactly who the person was." Although Sparks testified that at the time of the offense he observed only the back of the appellant's head and the side of his face, he identified the appellant at a pretrial hearing and at trial. We conclude that a rational jury could find beyond a reasonable doubt that the appellant was the perpetrator of the offense. This issue is without merit.

## III. Conclusion

Finding no merit to the issues raised by the appellant, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE