# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 4, 2010

## STATE OF TENNESSEE v. PATRICIA HOWELL

**Appeal from the Circuit Court for Madison County**
**No. 08-668     Donald H. Allen, Judge**

---

**No. W2009-02285-CCA-R3-CD  - Filed July 15, 2010**

---

A Madison County Circuit Court jury convicted the Defendant, Patricia Howell, of aggravated assault, a Class D felony. The trial court sentenced her to four years incarceration as a Range I, standard offender, suspended to probation after the service of five months. In this appeal as of right, the Defendant contends that the evidence is insufficient to support her conviction because the victim's injury did not constitute serious bodily injury; thus, she should have been convicted of assault. Following our review, we agree with the Defendant and remand the case for entry of a modified judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Modified;**
**Case Remanded.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ALAN E. GLENN, and J.C. MCLIN, JJ., joined.

George Morton Googe, District Public Defender; and Gregory D. Gookin, Assistant Public Defender, for the appellant, Patricia Howell.

Robert E. Cooper, Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; James G. Woodall, District Attorney General; and Brian Gilliam, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The record reflects that on June 16, 2008, the victim, Tigh Dominique Thrift, was removing furniture from the Defendant's apartment for his employer, Rent-A-Center. The Defendant became angry concerning the removal of the furniture and an altercation occurred

during which the Defendant pushed Mr. Thrift down the stairs of the apartment building.

Mr. Thrift stated that the Defendant was "consistently late" with weekly payments on her living room furniture so he decided to repossess the furniture when her payments were "over a month" past due. Another employee, Marcus Demetrius Reed, accompanied Mr. Thrift to the Defendant's apartment on June 16, 2008. Mr. Thrift recalled that the Defendant's minor son answered the door and told him that the Defendant was not home. The child's uncle, an adult who was staying at the apartment, allowed Mr. Thrift and Mr. Reed to enter the apartment. After a failed attempt to reach the Defendant by her cellular telephone, the uncle told the men that they could take the furniture.

After taking several small items to the truck, Mr. Thrift picked up a marble top coffee end table and suddenly the Defendant "came busting out of the back room." Mr. Thrift described the Defendant as "very hostile" and "very aggressive" and said that they immediately began to argue about the repossession of the furniture. He testified that "[s]he was talking very aggressively. She was telling us that she wasn't going to let us leave her residence with our furniture . . . . She threatened both of us." When the Defendant refused to allow the men to leave the apartment, Mr. Reed telephoned the manager who called the police.

Mr. Thrift testified that as he tried to leave with the marble top end table, the Defendant struck him in the back with a cordless telephone. He recalled that he told the Defendant "to back up off of me" but that as he approached the stair landing, he felt a "hard shove" in his back and fell down the stairs with the table in his hands. He stated that he fell about ten or twelve steps down before grabbing a rail and stopping his fall. He felt a sharp pain in his knee and sat on the steps until the ambulance arrived. Mr. Thrift denied raising his voice, threatening the Defendant, or striking the Defendant in any way.

Mr. Thrift suffered a bruised knee with fluid in it, but no broken bones. He spent "about five hours" at the emergency room. He was in pain for about two weeks and had to undergo therapy for three days to regain the flexibility in his knee. He wore a knee brace and used crutches for about a week. Due to the injury, he was unable to do any lifting required for his job and missed ten days of his regular work duties. He also stated that he missed a late June tryout for "Canadian league and N.F.L., Arena One [football] teams" due to the injury. He testified that his last doctor's visit concerning his knee occurred about a month after the injury - and about ten months before trial. He said that he still feels some stiffness from the injury if he bends it for a long time. When asked by the assistant district attorney if his knee was completely healed, Mr. Thrift replied that it was.

Mr. Reed testified consistent with the victim's testimony. He also stated that he was

locked in the apartment momentarily when the Defendant shoved the victim down the stairs, slammed the door, and locked it behind her while Mr. Reed was still inside the residence. He recalled that they were preparing to remove the items without any problems when the Defendant entered the living room. He stated that "[y]ou can't talk to her. . . If you say anything to her, she was going to cuss you out." He denied raising his voice at the Defendant or touching her in any way. When asked if he used "any f words" toward her, he testified that he never would do that because it would get him fired.

Officer Terry Dyer of the Jackson Police Department testified that he responded to the call of a disturbance at the apartments and found the victim "laying on the steps in obvious pain." The victim told Officer Dyer that he had been shoved down the steps while trying to repossess some furniture. When officers initially attempted to speak to the Defendant, she locked herself in the apartment and refused to open the door for the officers. When the Defendant's boyfriend arrived, he allowed officers into the apartment where they spoke to the Defendant and arrested her for aggravated assault. Officer Dyer described the Defendant as "very irate" about the situation because "she didn't think she had done anything wrong."

Sergeant Alberto Colon of the Jackson Police Department Violent Crimes Division testified that he took the Defendant's statement on the day following the incident. After waiving her Miranda rights, the Defendant told Sgt. Colon that the men broke into her apartment and assaulted her by pushing her and stomping her foot. Despite her allegation that Mr. Thrift and Mr. Reed had assaulted her, Officer Dyer stated that there was "[n]o apparent injury" found on the Defendant.

ANALYSIS

The Defendant argues that the evidence is insufficient to support her conviction for aggravated assault because the State failed to prove that the victim suffered serious bodily injury. The State contends that the jury properly made the determination of the severity of the injury and that the proof supports the verdict. Following our review, we agree with the Defendant.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The appellate court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in

testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). "A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

The offense of aggravated assault, relative to this case, requires proof beyond a reasonable doubt that the Defendant intentionally or knowingly caused serious bodily injury to the victim. Tenn. Code Ann. § 39-13-102(a)(1)(A). Serious bodily injury is defined as "bodily injury that involves a substantial risk of death; protracted unconsciousness; extreme physical pain; protracted or obvious disfigurement; or protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty." Tenn. Code Ann. § 39-11-106(a)(34).

In the light most favorable to the State, the proof shows that the victim suffered acute, sharp pain at the time of his injury. The victim underwent three physical therapy sessions within the month following the injury and was unable to perform his normal employment duties for ten days because he "couldn't do the lifting that I needed to for my job." However, he used crutches for only a week and was able to work "with limited priorities" throughout his recuperation. Furthermore, a year after the incident, the victim testified that he suffered only occasional stiffness from the injury when he bends his knees for a prolonged period of time. He also said that he "works out on his own now" and that his knee is "completely better today."

Based upon this evidence, we conclude that the victim did not suffer serious bodily injury. See, e.g., State v. Sims, 909 S.W.2d 46, 49 (Tenn. Crim. App. 1995) (broken nose did not constitute serious bodily injury for especially aggravated robbery conviction); see also State v. Demond Lamont Adkins, M2007-01728-CCA-R3-CD, 2008 WL 5100851 (Tenn. Crim. App. Dec. 4, 2008), perm. app. denied (Tenn. Apr. 27, 2009) (evidence that victim suffered permanent impairment of knee and back was sufficient to support conviction for aggravated assault); State v. Stacy McKinley Taylor, E2003-02458-CCA-R3-CD, 2004 WL 3021128 (Tenn. Crim. App. Dec. 29, 2004) (evidence that victim suffered extreme physical pain from collarbone injury that necessitated surgical repair and rehabilitative therapy was sufficient to support conviction for aggravated assault). Thus, there is insufficient proof to support a conviction for aggravated assault. Accordingly, we modify the Defendant's conviction to simple assault and remand the case for sentencing and the entry of a modified judgment.

4

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the trial court is modified and the case is remanded for further proceedings consistent with this opinion.

_____
D. KELLY THOMAS, JR., JUDGE