IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 17,2000

## State of Tennessee v. Danny Wayne Ratliff

**Appeal from the Criminal Court for Sullivan County**
**No. S42,105, Phyllis H. Miller, Judge**

_____

**No. E2000-00673-CCA-R3-CD**
**January 11, 2001**
_____

The defendant appeals his conviction of reckless endangerment with a deadly weapon and vandalism under $500.00. He contends the evidence was insufficient to support the verdict of the jury, the sentence of two years was excessive, and the trial court erred in sentencing the defendant to community corrections with the condition that he serve 200 days in the county jail. We find no error and affirm the trial court.

**Tenn.R.App.P. 3 Appeal as of Right; Judgment of the Criminal Court: Affirmed.**

WILLIAM B. ACREE, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and DAVID H. WELLES, JJ., joined.

William A. Kennedy, for the appellant.

Paul G. Summers, Attorney General & Reporter; J. Ross Dyer, Counsel; H. Greenley Wells, Jr., District Attorney General; Robert Montgomery, Assistant District Attorney, for the appellee, State of Tennessee.

**OPINION**

The defendant was convicted of reckless endangerment with a deadly weapon, a Class E felony and vandalism under $500.00, a Class A misdemeanor. He received an effective sentence of two years on community corrections with the condition that he spend 200 days in the county jail.

The defendant presents the following issues for review:

1. The evidence was insufficient to support the verdict of the jury.

2. The sentence of two years was excessive.

3. The trial court erred in sentencing the defendant to community corrections with the condition that he serve 200 days in the county jail.

To determine whether the evidence is sufficient to support the verdict of the jury, it is necessary to review the evidence.

As stated by the prosecuting attorney at trial, this is a "road rage" case.[1] The record reflects that on July 2, 1998, Jerry Michael Puckett, the victim, was traveling from Johnson City to Kingsport on Interstate 181. The victim was a student at East Tennessee State University in Johnson City but lived in Kingsport. The victim looked in his rear view mirror and observed a red Honda Prelude close behind him. It later developed that the defendant was driving the Prelude. In an effort to cause the defendant to back off, the victim tapped his brakes. As a result, the defendant slammed his brakes and swerved back and forth across the highway. The defendant passed the victim and yelled and made motions as he passed. The defendant then brought his vehicle to a stop on the interstate causing the victim to do likewise. As the defendant exited his vehicle, the victim drove around him. After observing the defendant behind him again, the victim took an exit from the interstate but was followed by the defendant and was rear ended by the defendant at a stop sign. The victim then drove to his home and the defendant followed him. The victim confronted the defendant with a Swiss army knife, and the defendant went to his car with the announced intention to get a gun. The victim ran into his home and called the police. The defendant went to the victim's front door with a metal tool box tray in his hand, but left when the victim's dog began barking. As the defendant walked by the victim's car, he knocked out the back window with the tool box. The defendant then left.

Officer Tim Crocker of the Kingsport Police Department was the investigating officer. He arrived at the victim's home at about 6:00 p.m., which was about 20 minutes after the incident. The victim told him what had happened, and the officer observed that the back window of the victim's automobile had been broken. Approximately two hours later, Officer Crocker went to the defendant's home. As he arrived, he saw the red Honda Prelude which had the same license number as was reported by the victim. He also noticed the front bumper was damaged. The defendant and a female who identified herself as Michelle Christian[2] met the officer in the yard of the defendant's home. The defendant had an alcoholic beverage in his hand and appeared to be intoxicated. The defendant related to the officer a scenario similar to that told him by the victim with two significant exceptions. According to the defendant, the victim was the aggressor, and, secondly, Michelle Christian was driving the Prelude. The defendant said the victim's driving angered him, and they followed the victim to his home because he was going to "whip his ass". The defendant admitted to the officer that he smashed the victim's window. The officer arrested the defendant for public intoxication and carried him to the police station. Ms. Christian also went to the police station, and, after arriving, she told the officer that the defendant was driving the Prelude at the time of the

---

[1]The victim and the defendant did not know each other.

[2]At the time of the trial, the defendant and Michelle Christian were married.

incident. She said she earlier misrepresented the situation because the defendant did not have a driver's license and because she thought he might be arrested for DUI.

The defendant called Brian Fletcher as a witness. Fletcher was a passenger in the defendant's vehicle along with Ms. Christian and a 4 year old child. Fletcher testified that they were traveling on the interstate, and the victim was behind them on their bumper. After letting the victim pass, the victim slammed on his brakes causing the defendant to do likewise. The defendant had to stop his vehicle on the interstate, and the victim drove away. According to Fletcher, other incidents of a similar nature occurred afterwards, and the victim eventually exited the interstate. The defendant followed the victim off the interstate. The victim then stopped suddenly at a stop sign which caused the defendant to tap the victim's bumper. They continued to follow the victim in an effort to determine "what was happening". When they reached the victim's home, the victim pulled out a knife and told the defendant that someone was going to die. The victim then retrieved a tool tray from his automobile. The victim and the defendant confronted each other, and the victim swung at the defendant with the knife. The defendant attempted to block the swing but missed the victim and hit the victim's back window with the tool tray and broke the window. The victim ran into the house and turned his dog on them. They then left. Fletcher said that he was at the defendant's house when the officer came and told the officer the same story. However, he did not recall Ms. Christian telling the officer that she had been driving the car.

The defendant testified in his own behalf. His testimony was essentially the same as the testimony of Fletcher. He added that the victim's antics caused the four year old child to cry, and he followed the victim off the interstate because he wanted the victim to see what he had done to the child. The defendant also admitted that he initially told the police officer that he was not driving the vehicle at the time of the incident. The defendant has prior convictions for theft and receiving stolen goods which were admitted for impeachment purposes.

It was undisputed that traffic was extremely heavy on the interstate at the time of these events.

In determining the sufficiency of the convicting evidence, this Court does not reweigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776 (Tenn.Crim.App. 1990), State v. Butler, 900 S.W.2d 305 (Tenn.Crim.App. 1994). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all the factual issues raised by the evidence are resolved by the trier of fact, not this court. State v. Cabbage, 571 S.W.2d 832 (Tenn. 1978). A guilty verdict, approved by the trial judge, credits the testimony of the State's witnesses and resolves all conflicts of testimony in favor of the theory of the State. State v. Hatchett, 560 S.W.2d 627 (Tenn. 1978). Since a verdict of guilty removes the presumption of innocence and replaces it with a presumption of guilt, the accused, has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the jury. State v. Tuggle, 639 S.W.2d 913 (Tenn. 1982), Butler, at 309. This court will not disturb a verdict of guilty due to the sufficiency of the evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond

a reasonable doubt. <u>Tuggle</u>, at 914, <u>Butler</u>, at 309.

The defendant argues that the factual dispute should have been resolved in his favor because his testimony as to the sequence of events was corroborated by the testimony of his passenger, Brian Fletcher. Basically, he argues that he had more eyewitnesses than the State. However, the credibility of the witnesses and the weight to be given to their testimony was a question for the jury who resolved this issue in favor of the State. We find that the evidence supports the verdict.

The defendant next argues that the sentence was excessive.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review of the record with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d)(1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances". <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." Id. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely de novo. Id. If appellate review reflects the trial court properly considered all the relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." <u>State v. Fletcher</u>, 805 S.W.2d 785, 789 (Tenn.Crim.App. 1991). Herein, the record reflects that trial court followed the sentencing principles, and, therefore, we will conduct a de novo review of the sentence with a presumption of correctness.

The trial court found three enhancement factors: (1) the defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (10) the defendant had no hesitation about committing a crime when the risk to human life was high; and (16) the crime was committed under circumstances under which the potential to bodily injury to a victim was great.

The trial court found no mitigating factors.

The defendant contends that the trial court erred in considering enhancement factors (10) and (16) because those factors are inherent in the offense of reckless endangerment with a deadly weapon. The defendant is correct that these factors are elements of the crime; however, these factors may be applied in situations where people other than the victim are near and are subject to harm. <u>State v. Sims</u>, 909 S.W.2d 46, 50 (Tenn.Crim.App. 1995). Also, see <u>State v. Makoka</u>, 885 S.W.2d 366, 373 (Tenn.Cr.App.1994); and <u>State v. Griffis</u>, 964 S.W.2d 577, 603 (Tenn.Crim.App.1997). The trial court found that these factors applied because there were passengers in the defendant's automobile and because the crime occurred on a heavily traveled highway. We find that the trial court correctly applied enhancing factors 10 and 16, and it was proper to enhance the sentence from one year to two years.

The defendant also argues that he is entitled to full probation. This issue was not properly presented because the defendant did not brief this issue, but, nevertheless, we will consider this issue.

The burden of proof for establishing full probation and the criteria which may be considered in determining a defendant's suitability for full probation was addressed in State v. Bingham, 910 S.W.2d 448 (Tenn.Crim.App. 1995):

> "determining whether a defendant is entitled to an alternative sentence necessarily requires a separate inquiry from that of determining whether the defendant is entitled to full probation. This is so because the inquiries involve different burdens of proof. Where a defendant is entitled to the statutory presumption of alternative sentencing, the State has the burden of overcoming the presumption with evidence to the contrary. Conversely, the defendant has the burden of establishing suitability for full probation, even if the defendant is entitled to the statutory presumption of alternative sentencing. See Tenn. Code Ann. {S.W.2d 456} § 40-35-303(b)(1994 Supp).3 There is no bright line rule for determining when probation should be granted. To meet the burden of establishing suitability for full probation, the defendant must demonstrate that probation will "subserve the ends of justice and the best interest of both the public and the defendant." State v. Dykes, 803 S.W.2d 250, 259 (Tenn Crim. App. 1990).
>
> The following criteria, while not controlling the discretion of the sentencing court, shall be accorded weight when deciding the defendant's suitability for probation: (1) "the nature and [circumstances] of the criminal conduct involved", Tenn. Code Ann. § 40-35-210(b)(4)(1990 Repl.); (2) the defendant's potential or lack of potential for rehabilitation, including the risk that during the period of probation the defendant will commit another crime, Tenn. Code Ann. § 40-35-103(5) (1990 Repl.); (3) whether a sentence of full probation would unduly depreciate the seriousness of the offense, Tenn. Code Ann. § 40-35-103(1)(B)(1990 Repl.); and (4) whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes, Tenn. Code Ann. § 40-35-103(1)(B)(1990 Repl.).
>
> In arriving at the appropriate sentence, the sentencing court may not consider any factor which constitutes an element of the offense. See State v. Travis, 622 S.W.2d 529, 533-534 (Tenn. 1981). Neither should the sentencing decision originate from a generalization about the type of crime committed. Id. . . . However, the facts and circumstances which surround the criminal act are appropriate considerations. Denial of probation may be based solely upon the circumstances of the offense when they are of such a nature as to outweigh all other factors favoring probation. State v. Fletcher, 805 S.W.2d 785, 788-89 (Tenn. Crim. App. 1991)."

Bingham, at pages 455, 456.

The trial court held that the plaintiff failed to carry the burden of demonstrating to the Court that it would subserve the ends of justice in the community and to the defendant by placing the defendant on full probation. She found that the defendant was untruthful about the manner in which the offense occurred, that the defendant had a poor criminal history, that measures less restrictive than confinement had been unsuccessfully applied a number of times, that the defendant failed to pay child support and did not work for four years. The trial court also considered the enhancement factors and the circumstances of the offense.

The findings of the trial court clearly support her conclusion that the defendant failed to carry the burden of proof of establishing suitability for full probation. We find that the defendant is not entitled to full probation.

The final issue presented for review is the trial court erred in sentencing the defendant to community corrections with the condition that he serve 200 days in the county jail.

The defendant argues that a sentence to community corrections is a sentence of confinement, and thus, his sentence to the county jail along with the sentence to community corrections exceeds his release eligibility date. The defendant relies upon State v. Hill, C.C.A. No. 01C01-9802-CC-00072 (Tenn.Crim.App., Nashville, February 25, 1999). In Hill, the defendant was convicted of a Class E felony and was sentenced to two years with one year to be served in the county jail and the other year to be served in the community corrections program. The Court held that the sentence was improper because it required the defendant to remain in jail longer than his release eligibility date, and the sentence was inconsistent with T.C.A. 40-35-501 (a) (3) which provides:

> "Notwithstanding any other provision of law, inmates with felony sentences of two (2) years or less shall have the remainder of their original sentence suspended upon reaching their release eligibility date."

We do not agree that a community corrections sentence is a sentence of confinement. T.C.A. §40-36-106 (e) expressly provides that a community corrections sentence is a sentence in lieu of incarceration, and grants the Court the authority to alter or amend at anytime, the length, terms or conditions of the sentence imposed. As stated in a concurring opinion in State v. Lindemyer, CCA No. 03C01-9808-CR-00284 (Tenn.Crim.App. Knoxville, October 18, 1999), a sentence involving the community corrections program is not a sentence of confinement, and release eligibility dates do not apply to such a sentence. Also, See State v. Marlowe, EL1998-00873-CCA-R3-CD (Tenn.Crim.App. Knoxville, June 30, 2000), wherein this Court held a six month period of confinement followed by an eighteen month sentence to community corrections was appropriate.

The defendant was sentenced to 200 days in the county jail which is less than thirty percent (30%) of his two year sentence. Thus, his sentence does not extend beyond his release eligibility date. In summary, we hold that a sentence to community corrections is not a sentence of

confinement and that the trial court's sentence of two years to community corrections with 200 days of that sentence to be served in the county jail was a proper sentence.

In conclusion, we hold that the verdict of the jury was supported by the evidence; and that the length and manner of service of the sentence was proper.

_____
WILLIAM B. ACREE, JR. SPECIAL JUDGE