# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs March 20, 2001

## STATE OF TENNESSEE v. ANDRE DEWAYNE TUCKER

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 223978     Douglas A. Meyer, Judge**

_____

**No. E2000-00932-CCA-R3-CD**
**April 19, 2001**
_____

The defendant was convicted by a Hamilton County jury of aggravated assault, a Class C felony. The defendant now contends: (1) the evidence was insufficient to sustain his conviction; and (2) his sentence is excessive. After a thorough examination of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Ardena J. Garth, District Public Defender; Donna Robinson Miller, Assistant District Public Defender (on appeal); and Tom Landis, Assistant District Public Defender (at trial), for the appellant, Andre Dewayne Tucker.

Paul G. Summers, Attorney General and Reporter; Patricia C. Kussmann, Assistant Attorney General; William H. Cox III, District Attorney General; Dean C. Ferraro and Kelli Black, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

A Hamilton County jury convicted the defendant of aggravated assault. On appeal, he contends the evidence was insufficient to sustain his conviction, and his sentence is excessive. We affirm the judgment of the trial court.

## FACTS

Due to a domestic dispute, the victim, Anna Marie Suttles, was living in her car and earned money by driving people to and from work. She was an admitted user of cocaine. On July 8, 1998, she agreed to drop a friend off at a local store. While at the store, the victim met a known drug

dealer named Yates, who offered to put gas in her car, get her a hotel room for the night, and provide her with something to eat in exchange for the use of her car. Yates stated that he only needed the car for a few hours, and the victim agreed.

Yates had not returned the victim's car approximately eight hours later, and the victim began looking for him. She was told by someone in the neighborhood that Yates sold drugs in a nearby parking lot. In route to the parking lot, she met the defendant, who told her he had $400 and was looking for a sex partner. She replied that she was not interested. Later, the defendant returned to the parking lot and repeated his offer. The victim again refused and stated that she was looking for her car and needed to use a telephone. The defendant told the victim she could use the telephone at his sister's residence, and the victim followed him to an apartment.

The victim testified that as soon as she entered the apartment, the defendant pulled out a gun and told her to go upstairs to the bedroom. The victim further claimed that once she was upstairs, the defendant ordered her to take off her clothes and lay on the bed. The victim testified that she was forced to have sexual intercourse with the defendant.[1]

The victim testified that, thereafter, the defendant began choking her, and she slipped in and out of consciousness. She stated that the defendant continued to hit and choke her, and her body was jerking and shaking. She further testified that she defecated and urinated on herself. The victim testified that when she tried to escape, the defendant hit her in the back of the head with the butt of the pistol. She testified the defendant "pick[ed] my body up" and pushed her out of the second-story bedroom window. She landed on a chain link fence, which ripped a long gash in her inner thigh.

Erica Caldwell, a resident of the complex, saw the victim running naked and screaming. Thereafter, the police arrived and the victim was transported to the hospital, where she received a CT scan for her head injuries and sutures for her head and thigh lacerations. In addition to the injuries to her thigh and head, the victim suffered a nosebleed, a hemorrhage in her eye, contusions, lacerations, and abrasions to her lip, breast, thighs, calf, scalp, shoulder blade, hip and forearm. The nurse from the rape crisis center testified that these injuries were consistent with the victim's account of the events leading to her admission to the hospital. After a rape examination, the victim was admitted to the trauma intensive care unit.

The defendant testified at trial and denied owning a gun, denied forcing the victim to have sex with him, and denied throwing her from the window. Rather, he testified that he propositioned the victim and she agreed. Thereafter, he gave her money for crack, and when she returned, she smoked the crack and they had sex. According to the defendant, the victim then left the apartment. However, defendant contends she returned a few minutes later and tried to sell him some jewelry, which he refused. Defendant stated that a few moments later he discovered that the victim was

---

[1]The parties stipulated prior to trial that sexual intercourse took place between the victim and the defendant. The defendant claimed it was consensual.

trying to steal his VCR, and he "grabbed her, pushed her out the door, smacked her one time, . . . turned around, [and] walked back in the house."

The defendant was tried on charges of aggravated rape and aggravated assault. A jury acquitted him of the rape charge and found him guilty of aggravated assault.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant alleges that the evidence was insufficient to sustain his conviction for aggravated assault. Specifically, the defendant argues that the state failed to prove the defendant caused "serious bodily injury" to the victim. *See* Tenn. Code Ann. § 39-13-102(a)(1)(A). We respectfully disagree.

### A. Standard of Review

When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1,18 (Tenn. Crim. App.1996).

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn.1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App.1995).

### B. Analysis

The defendant's challenge to the sufficiency of the evidence is based on his claim that the victim did not suffer "serious bodily injury." The pertinent charge alleges that the defendant "did unlawfully, intentionally, or knowingly cause serious bodily injury to Anna Marie Suttles, in violation of Tennessee Code Annotated 39-13-102, against the peace and dignity of the State." For reasons not apparent in the record, the defendant was not charged with aggravated assault by the use or display of a deadly weapon. *See* Tenn. Code Ann. § 39-13-102(a)(1)(B). Thus, under the charge the state was required to prove that the assault led to "serious bodily injury." *See* Tenn. Code Ann. § 39-13-102(a)(1)(A).

The code defines "serious bodily injury" as "bodily injury which involves: (A) [a] substantial risk of death; (B) [p]rotracted unconsciousness; (C) [e]xtreme physical pain; (D) [p]rotracted or obvious disfigurement; or (E) [p]rotracted loss or substantial impairment of a function of a bodily member, organ or mental faculty." Tenn. Code Ann. § 39-11-106(a)(34). "Bodily injury," on the other hand, "includes a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(a)(2).

The defendant primarily relies upon this court's decision in State v. Sims, 909 S.W.2d 46 (Tenn. Crim. App. 1995). In Sims, the defendant, during a robbery, struck the victim with his gun, causing her to suffer from a bruised cheekbone and a broken nose. *Id.* at 47-48. This court applied the doctrine of *ejusdem generis*, concluding that the enumerated portions of the definition of serious bodily injury should be read as coming from the same class of injuries. *Id.* at 49. This Court held that "the pain commonly associated with a broken nose is [not] extreme enough" to establish serious bodily injury. *Id.* at 49. The defendant claims the same result should be reached in the instant case. We find the defendant's reliance on Sims is misplaced.

In State v. Darren Matthew Lee, C.C.A. No. M1999-01625-CCA-R3-CD, 2000 WL 804674 (Tenn. Crim. App. filed June 23, 2000, at Nashville), *perm. to app. denied* (Tenn. 2000), this Court again addressed this issue. In Lee, the defendant hit the victim several times until he fell on the ground and continued kicking the victim. *Id.* at *1. This court distinguished Sims stating that the "victim in Sims was struck once with a handgun and received a broken nose, a laceration across her nose, some facial swelling and a bruised cheekbone." *Id.* at *3. In contrast, the victim in Lee was kicked repeatedly in the face, received two black eyes, severe facial swelling, and his lip was torn. *Id.* at *4. The victim missed a week of work and suffered extensive physical pain. This court found the victim suffered serious bodily injuries.

The case *sub judice* is more similar to Lee. The defendant lured the victim into an apartment under the guise that she could use the telephone. Upon entry into the apartment, the defendant drew a pistol. He put the gun in her mouth and choked her. The defendant then "popped [her] from the side and [her] eyes come (sic) open." The defendant continued striking and choking her to such degree that her feet began "jerking," and she urinated and defecated on herself. The victim then removed the fan from the window in an attempt to escape, but while she was removing the fan, the defendant struck her in the back of her head with the pistol. The choking and repeated blows left the victim in a condition that she was "semi going in and out of consciousness." The defendant then picked her up and threw her out of the second-story window.

The victim landed on a chain link fence causing a long gash in her inner thigh. Fearing the defendant would shoot her, the victim took cover and then fled the scene. After attempting to get assistance, the victim collapsed in a grassy area. She testified that she "started feeling [herself] getting weaker and weaker, . . . bleeding, and [she] just lay (sic) there."

Officer Iran Meadows testified that the injury to the victim's leg was a "real deep" gash. Also, the victim had a gash in the back of her head from being struck with the pistol, and she had abrasions and contusions on her body. A fireman who responded to the scene said he had "never seen nothing (sic) like it before." Furthermore, during the victim's transport to the hospital, she testified that when the paramedics could not get her blood pressure, one stated, "we're losing her, we're losing her," and they solicited information from her in the event she died. The victim further testified that she "thought [she] was dying," she "was in a lot of pain," and she had never been in that much pain before. The victim also had a scleral hemorrhage and a scalp laceration that had to be stapled. The victim was admitted to the trauma intensive care unit of Erlanger Hospital.

Sims held that "the pain commonly associated with a broken nose is [not] extreme enough" to constitute "serious bodily injury." 909 S.W.2d at 49. However, the nature and extent of injuries suffered by Anna Marie Suttles clearly distinguish this case from Sims. Viewing the evidence in the light most favorable to the state, her injuries are more akin to the categories described in "serious bodily injury" rather than "bodily injury." *See* Tenn. Code Ann. §§ 40-11-106(a)(2), -106(a)(34). Thus, a rational jury could find the defendant guilty of aggravated assault.


## II.  LENGTH OF SENTENCE

The defendant contends the trial court inappropriately sentenced him to the Range I maximum sentence of six years for aggravated assault, a Class C felony. Specifically, he argues that the trial court improperly applied enhancement factor (9), the defendant possessed or employed a firearm during the commission of the offense. *See* Tenn. Code Ann. § 40-35-114(9). The defendant argues that the possession or use of a weapon is an element of the offense of aggravated assault and, thus, cannot be used to enhance his sentence.

### A.  Standard of Review

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

A trial court should start at the minimum sentence, enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Leggs, 955 S.W.2d 845, 848 (Tenn. Crim. App. 1997); *see* Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments.

**B. Trial Court's Findings**

The pre-sentence report reflects that defendant had a prior conviction for felony theft and three prior convictions for driving on a revoked license. The trial court applied two enhancement factors: previous history of criminal convictions (Tenn. Code Ann. § 40-35-114(1)), and employment of a firearm during the commission of the offense (Tenn. Code Ann. § 40-35-114(9)). The trial court further found that defendant's attendance of anger management classes was a miscellaneous mitigating factor. *See* Tenn. Code Ann. § 40-35-113(13). After weighing the enhancement and mitigating factors, the trial court set the sentence at six years in the Department of Correction.

**C. Analysis**

The trial court properly applied enhancement factor (9). The amended indictment charged the defendant with aggravated assault.[2] The agreed amended indictment alleged the defendant caused "serious bodily injury" to the victim and does not allege the use or display of a deadly weapon. Use of a deadly weapon is an element of the offense of aggravated assault under Tenn. Code Ann. § 39-13-102(a)(1)(B); however, aggravated assault may also be committed when the assault results in serious bodily injury. *See* Tenn. Code Ann. § 39-13-102(a)(1)(A).

The use of a deadly weapon is not an essential element of an aggravated assault causing serious bodily injury and can be an enhancement factor. State v. Carter, 986 S.W.2d 596, 598 (Tenn. Crim. App. 1998). At trial, the victim testified that the defendant struck her in the head with the butt of a gun and pointed the weapon at her during the assault. Accordingly, the use of a deadly weapon was properly considered by the trial court as an enhancement factor. *See* Tenn. Code Ann. § 40-35-114(9).

Furthermore, we do not find the defendant's sentence to be excessive. While the trial court did find one mitigating factor in addition to the two enhancement factors, the weight given to each factor is left to the discretion of the trial court, and we will not disturb the sentence as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. Moss, 727 S.W.2d at 238. We conclude that the defendant has failed to demonstrate that his sentence is excessive.

### III. CONCLUSION

Upon a thorough review of the record, we conclude: (1) the evidence was sufficient to prove the defendant committed aggravated assault by causing serious bodily injury to the victim; and (2) the trial court properly sentenced the defendant. The judgment of the trial court is affirmed.

---

[2] Prior to the start of trial, the state sought to amend the original indictment, which alleged attempted first degree murder, to reflect the charge of aggravated assault. The defendant agreed to the amendment.

_____
JOE G. RILEY, JUDGE